## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **FELICIA GAINES, on behalf of herself and others similarly situated,** | **Case No. 1:19-cv-00528-WMR** |
| **Plaintiff,** | |
| **v.** | |
| **AMAZON.COM, LLC AMAZON LOGISTICS, INC., and ON THE GO EXPRESS, LLC,** | |
| **Defendants.** | |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF THE
## SETTLEMENT AGREEMENT AND ATTORNEYS' FEES AND COSTS

**TABLE OF CONTENTS**

I.     INTRODUCTION ...........................................................................................1

II.    PROCEDURAL HISTORY...........................................................................3

III.   THE TERMS OF THE SETTLEMENT AGREEMENT ............................4

       A.    The Settlement Collective Members....................................................4

       B.    Calculation and Distribution of The Settlement Amount ...................4

       C.    Release of Claims ...............................................................................6

       D.    Attorneys' Fees and Costs ..................................................................7

IV.    ARGUMENT ...............................................................................................7

       A.    The Proposed Settlement is a Fair and Reasonable Resolution of a
             *Bona Fide* Dispute Over FLSA Provisions...........................................7

             1.    A *Bona Fide* Dispute Over FLSA Provisions Existed Between
                   the Parties .................................................................................8

             2.    The Settlement Is Fair and Reasonable ...................................10

                   a.    The Parties Fairly and Honestly Negotiated the
                         Settlement and There Was No Fraud or Collusion ........10

                   b.    The Settlement is Fair and Reasonable In View of the
                         Complexity, Expense, and Likely Duration of the
                         Litigation, and the Range of Recovery...........................11

                   c.    The Stage of the Proceedings and Discovery Completed
                         ........................................................................................12

                   d.    The Risks of Achieving Success on the Merits..............13

             3.    The Proposed Settlement Furthers the Purpose of the FLSA...14

       B.    Final Certification of the Settlement Collective Pursuant to 29 U.S.C.
             § 216(b) is Appropriate.......................................................................15

i

C.      The Service Award to the Named Plaintiff Is Justified and Should Be Approved .................................................................................18

D.      The Court Should Approve Plaintiff's Counsel's Fees and Approve Reimbursement of their Out-of-Pocket Costs....................................20

     1.      Plaintiff's Counsel Fees Sought Are Reasonable ....................22

     2.      Plaintiff's Counsel's Out-of-Pocket Costs are Reasonable ......24

V.      CONCLUSION ............................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Barbee v. Kochg River Steel, LLC*,
   927 F.3d 1024 (8th Cir. 2019) ...........................................................................22

*Bonetti v. Embarq Mgmt. Co.*,
   715 F. Supp. 2d 1222 (M.D. Fla. 2009)..............................................................21

*Brooklyn Sav. Bank v. O'Neil*,
   324 U.S. 697 (1945).............................................................................................14

*Campbell v. Pincher's Beach Bar Grill Inc.*,
   No. 2:15-cv-695-FtM-99MRM,
   2017 WL 3700629 (M.D. Fla. Aug. 24, 2017) .............................................17, 22

*Cook v. Niedert*,
   142 F.3d 1004 (7th Cir 1998) .............................................................................19

*Crabtree v. Volkert, Inc.*,
   11-0529-WS-B, 2013 WL 593500 (S.D. Ala. Feb. 14, 2013) .....................*passim*

*Crankshaw v. NCL Corp.*,
   No. 16-cv-20415,
   2018 U.S. Dist. LEXIS 42788, at *8 (S.D. Fla. Mar. 14, 2018) ..............8, 20, 24

*Craig v. Rite Aid Corp.*,
   No. 4:08-cv-2317, 2013 WL 84928 (M.D. Pa. Jan. 7, 2013) .............................20

*Fox v. Tyson Foods, Inc.*,
   No. 4:99-cv-1612-VEH, 2006 WL 6012784 (N.D. Ala. Nov. 15, 2006) ............15

*Genesis Healthcare Corp. v. Symczyk*,
   133 S. Ct. 1523 (2013)........................................................................................16

*George v. Academy Mortg. Corp. (UT)*,
   369 F. Supp. 3d 1356 (N.D. Ga. 2019).........................................................passim

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)......................................................................................22, 23

*Hipp v. Liberty National Life Insur. Co.*,
   252 F. 3d 1208 (11th Cir. 2001) .................................................................15, 16

*Ingram v. The Coca-Cola Co.*,
   200 F.R.D. 685 (N.D. Ga. 2001).........................................................................19

*In re Arby's Rest. Grp., Inc. Data Security Litig*.,
   No. 1:17-cv-1035-WMR, 2019 WL 2720818 (N.D. Ga. June 6, 2019) ..21, 23, 24

*Lauture v. A.C. Moore Arts & Crafts, Inc.*,
   17-cv-10219-JGD, 2017 WL 6460244 (D. Mass. June 8, 2017) ........................16

*Leverso v. SouthTrust Bank of Ala. Nat. Ass'n*,
   18 F. 3d 1527(11th Cir. 1994..............................................................................10

*Lockwood v. CIS Servs., LLC*,
No. 3:16-cv-965-J-39PDB,
2019 WL 2226126 (M.D. Fla. May 3, 2019) .......................................10, 14, 17, 23

*Lynn's Food Stores, Inc. v. U.S.*,
   679 F. 2d 1350 (11th Cir 1982) .......................................................................7, 8

*Morgan v. Family Dollar Stores, Inc.*,
   551 F. 3d 1233 (11th Cir. 2008) ........................................................................18

*Norman v. Housing Auth. of Montgomery*,
   836 F. 2d 1292 (11th Cir. 1988) ...................................................................22, 23

*Prena v. BMO Fin. Corp.*,
   No. 15 Civ. 9175, 2015 WL 2344949 (N.D. Ill. May 15, 2015) ........................16

*Reams v. Michael Angelo Rest., Inc.*,
   7:19-cv-53 (HL), 2019 WL 6898656 (M.D. Ga. Dec. 18)...........................*passim*

*Reyes v. AT&T Mobility Servs., LLC*,
   No 10-20837-Civ-COOKE/TURNOFF,
   2013 WL 12219252 (S.D. Fla. June 21, 2013) ...................................................25

*Sand v. Greenberg*,
   No. 08-cv-7840, 2011 WL 7842602 (S.D.N.Y. Oct. 6, 2011).............................20

iv

*Tam Su v Elec. Arts, Inc.*,
 No 6:05-cv-131-Orl-28JGG,
 2006 WL 4792780 (M.D. Fla. Aug. 29, 2006) ..............................................20, 24

*Urbas v. Nutritious Lifestyles, Inc.*,
 No. 3:19-cv-855-J-34PDB, 2020 WL 264686 (M.D. Fla. Jan. 2, 2020) ............22

*Wingrove v. D.A. Tech., Inc.*,
 No. 1:10–CV–3227–HLM–WEJ, 2011 WL 7307626 (N.D. Ga. Feb. 11, 2011)..8

**Statutes**

29 U.S.C. § 201 ..............................................................................................1

29 U.S.C. § 202 ............................................................................................14

29 U.S.C. § 216(b).................................................................................*passim*

**Rules**

Federal Rule of Civil Procedure 23 ........................................................................16

## I.    INTRODUCTION

This collective action wage and hour lawsuit against Defendants Amazon.com, LLC, Amazon Logistics, Inc. (together, "Amazon") and On the Go Express, LLC ("On the Go") (collectively, "Defendants"), has been settled, and Plaintiff Felicia Gaines ("Named Plaintiff" or "Plaintiff") respectfully submits this memorandum of law in support of Plaintiff's Unopposed Motion for Approval of the Settlement Agreement. The proposed settlement satisfies the criteria for approval of a Fair Labor Standards Act, 29 U.S.C. § 201 ("FLSA") collective action settlement because it is a fair and reasonable resolution of a *bona fide* dispute reached by capable, experienced counsel with extensive experience in complex employment law cases, and after arm's-length settlement negotiations assisted by the Honorable Walter E. Johnson, U.S. Magistrate Judge.

Plaintiff's Complaint alleges that Defendants failed to pay Delivery Associates ("DAs") overtime compensation when DAs worked more than 40 hours in a workweek when On the Go paid DAs on a day rate basis, in violation of the FLSA. Investigation and analysis of On the Go's payroll information during the course of litigation and through the structured ADR process engaged in by the parties revealed that On the Go did pay overtime in addition to a day rate. The settlement reached by the parties reflects Plaintiff's analysis and allegations that On the Go did

1

not track all hours worked during the time period when it paid a day rate.  Defendants continue to deny all allegations, and dispute any liability. Following an in-person mediation with Magistrate Judge Johnson, and continued arm's-length negotiations, the Parties agreed to terms to settle the matter for the time period when On the Go paid DAs a day rate – between June 17, 2018 and January 26, 2019. The terms of the Parties' settlement are set forth in the Settlement Agreement (the "Settlement Agreement" or "Agreement"), attached as Exhibit 1.

Plaintiff respectfully submits that this Motion should be granted because the proposed Settlement Agreement satisfies all the criteria for approval under federal law and is a fair and reasonable resolution of a *bona fide* dispute.  Accordingly, Plaintiff requests that the Court issue an order: (1) granting approval of the  Parties' Settlement Agreement as a fair and reasonable resolution of a *bona fide* disputeunder the Fair Labor Standards Act; (2) for settlement purposes, finally certifying the collective pursuant to 29 U.S.C. § 216(b) on behalf of the Settlement Collective Members as defined in the Settlement Agreement; (3) approving Plaintiff's Counsel's attorneys' fees in the amount of $83,333.33 and reimbursement of costs in the amount of $6,323 (which were separately negotiated and less than their lodestar);  and granting all relief set forth in the accompanying Proposed Order. Defendants do not oppose this Motion.

2

## II.    PROCEDURAL HISTORY

Plaintiff worked as a DA in Georgia, and filed this case on January 31, 2019, alleging Defendants failed to pay DAs overtime compensation when they worked more than 40 hours in a workweek, in violation of the FLSA. Agreement ¶ 1. In April 2019, the Parties agreed to stay this matter so they could participate in an alternative dispute resolution ("ADR") process in an effort to resolve Plaintiff's collective action claims. (ECF No. 16, 17.)

On March 13, 2020, the Parties participated in a full-day in-person mediation session in the Courthouse in Rome, Georgia, conducted by the Honorable Walter E. Johnson, U.S. Magistrate Judge. Prior to the mediation, Defendants provided Plaintiff's Counsel with On the Go's payroll data and timekeeping data, and Amazon's delivery data ("Rabbit" data") for DAs who were paid by On the Go and delivered packages to Amazon's customers, which Plaintiff's Counsel reviewed and analyzed extensively, with the assistance of their in-house Data Analyst.[1] The Parties engaged in numerous meet and confer sessions regarding the facts and data prior to the mediation. Agreement ¶ 3.

---

[1] Investigation and analysis of On the Go's payroll information during the course of litigation and through the structured ADR process revealed that On the Go did pay overtime in addition to a day rate. The settlement reached by the parties reflects Plaintiff's analysis and allegations that On the Go did not track all hours worked during the time period when they paid a day rate.

As a result of the mediation and continued arm's length negotiations, the Parties agreed to settle the claims according to the terms of this Settlement Agreement. The Parties separately negotiated the wage damages and attorneys' fees and costs. Agreement ¶ 4.

## III. THE TERMS OF THE SETTLEMENT AGREEMENT

### A. The Settlement Collective Members

There are approximately 488 Settlement Collective Members, which include Plaintiff, Opt-In Plaintiffs, and all current and former DAs who were paid by On the Go to deliver packages to Amazon's customers in the United States between June 17, 2018 and January 26, 2019 (the "Settlement Period"). Plaintiff relied on Defendants' records in negotiating this Settlement. *See* Agreement ¶ 11(s).

The Parties have stipulated and agreed that, for settlement purposes only, certification of the Settlement Collective Members as a collective under the FLSA pursuant to 29 U.S.C. § 216(b) is appropriate. *Id.* ¶ 9. Each Settlement Collective Member will be fully advised of this settlement with the Notice of Settlement.

### B. Calculation and Distribution of The Settlement Amount

Pursuant to the Settlement Agreement, within thirty days after this Court approves this proposed Settlement, Defendants will pay $250,000.00 (the "Gross Settlement Amount") into the Qualified Settlement Fund to be administered by the

4

Settlement Administrator. Agreement ¶ 16. In addition to a Gross Settlement Amount, Defendants agree to separately pay the costs of settlement administration and the employer's share of payroll taxes. *Id.* ¶ 11(g)(m). The Parties' agreed-upon amounts for Plaintiff's Counsel's attorneys' fees and out-of-pocket costs, a Service Award to Plaintiff and a Reserve Fund[2] (all subject to Court approval) will be deducted from the Gross Settlement Amount, and the remaining amount will be the "Net Settlement Amount." ¶ 11(i). The Net Settlement Amount, which will be approximately $147,843.67, will be distributed to the Settlement Collective under an allocation formula that credits individuals with settlement shares for each week when they worked four or more days, and which provides for a minimum payment of $100 per Settlement Collective Member. *See* Agreement ¶ 21(a)-(b) (describing the allocation formula). Fifty percent (50%) of the amount paid to each Settlement Collective Member will be considered wages and the remaining 50% will be

---

[2] The Settlement Administrator will set aside a $5,000 Reserve Fund from the Gross Settlement Amount to account for any potential disputed, belated or unexpected payments to Settlement Collective Members after the Settlement Awards have been issued during the 180-day Check Cashing Period. Any funds remaining in the Reserve Fund will be sent to the Atlanta Legal Aid Society as a *cy pres* recipient agreed to by the Parties, subject to the Court's approval. Agreement ¶ 20. Founded in 1924 by a collection of lawyers, the Atlanta Legal Aid Society has offered free civil legal aid for low income people across metro Atlanta who cannot afford an attorney. Atlanta Legal Aid Society is an appropriate *cy pres* recipient. *See* https://atlantalegalaid.org/about-us/our-work/.

considered liquidated damages. Agreement ¶ 25.

All Settlement Award checks issued to Settlement Collective Members will be valid and negotiable for a period of 180 days from the date the checks are issued and will be accompanied by a cover letter when they are sent to Settlement Collective Members. A reminder letter will be distributed via U.S. mail and email to those who have still not cashed their check after 60 days. Any amounts from uncashed settlement checks remaining after the 180-day period will be paid back to Defendants in recognition of the fact that those individuals who do not cash their settlement checks do not release any claims against the Defendants. *Id.* at ¶ 26.

### C.    Release of Claims

In exchange for settlement benefits, Settlement Collective Members who sign, deposit and/or cash their Settlement Award agree not to sue the Released Parties for the Released Claims.[3] Agreement ¶ 11(o). In addition, and in consideration for her service award, Plaintiff will provide a broader release of claims. *Id.* ¶ 12.  Settlement Collective Members who do not sign, deposit and/or cash their Settlement Award shall not release any claims against Defendants. *Id.* ¶ 26.

---

[3] "Released Claims" mean any and all FLSA claims (and related wage claims) that accrued to the Settlement Collective Members while working for Defendants at any time between the Settlement Period, including, without limitations, all FLSA claims for unpaid overtime wages, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses. Agreement ¶ 11(n).

### D.      Attorneys' Fees and Costs

Plaintiff's Counsel seeks Court approval for attorneys' fees of $83,333.33 (*i.e.,* one-third of the Gross Settlement Amount). This separately negotiated amount will compensate Plaintiff's Counsel for all work performed in this lawsuit as well as all the work remaining to be performed, such as, securing Court approval of the Settlement Agreement, and making sure that the Settlement Agreement is fairly administered and implemented. In addition, Plaintiff's Counsel's seeks Court approval of Plaintiff's Counsel's out-of-pocket costs in the amount of $6,323.

## IV.   ARGUMENT

### A.      The Proposed Settlement is a Fair and Reasonable Resolution of a *Bona Fide* Dispute Over FLSA Provisions

The FLSA provides that employers who violate its provisions "shall be liable to the employee … affected in the amount of their unpaid minimum wages or their unpaid overtime compensation, as the case may be…." 29 U.S.C. § 216(b). *Reams v. Michael Angelo Rest., Inc.*, 7:19-cv-53 (HL), 2019 WL 6898656, at *1 (M.D. Ga. Dec. 18, 2019). "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Crabtree v. Volkert, Inc.*, 11-0529-WS-B, 2013 WL 593500 at *2 (S.D. Ala. Feb. 14, 2013) (citing *Lynn's Food Stores, Inc. v. U.S.*, 679 F. 2d 1350, 1353 (11th Cir 1982)).

"If the proposed settlement agreement reflects 'a fair and reasonable resolution of a *bona fide* dispute,' a court can approve the settlement 'to promote the policy of encouraging settlement of litigation.'" *Reams*, 2019 WL 6898656, at \*2 (citing *Lynn's Food,* 679 F. 2d at 1354,1355). The standard for approval of a proposed settlement under the FLSA requires only the court's determination that the proposed settlement "is a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Lynn's Food*, 679 F. 2d at 1355. "In reviewing FLSA settlements under *Lynn's Food*, courts 'should be mindful of the strong presumption in favor of finding a settlement fair.'" *Crabtree,* 2013 WL 593500, at \*3 (citation omitted); *Wingrove v. D.A. Tech., Inc.*, No. 1:10–CV–3227–HLM–WEJ, 2011 WL 7307626, at \*2 (N.D. Ga. Feb. 11, 2011) ("strong presumption" that FLSA settlements are fair and reasonable).

## 1.   A *Bona Fide* Dispute Over FLSA Provisions Existed Between the Parties

A proposed settlement resolves a *bona fide* dispute where its terms "reflect a reasonable compromise over issues, such as . . . back wages, that are actually in dispute." *Lynn's Food*, 679 F.2d at 1354. *Reams,* 2019 WL 6898656, at \*2. *Crankshaw v. NCL Corp.*, No. 16-cv-20415-GAYLES, 2018 U.S. Dist. LEXIS 42788, at \*8 (S.D. Fla. Mar. 14, 2018) (approving settlement which resolved *bona fide* dispute with respect to whether the employees are entitled to overtime under

FLSA and amount of compensation due).

Here, the Parties disagreed on numerous legal and factual issues that would have impacted the case moving forward, including, but not limited to, the following:

1) the amount of time that the DAs spent performing their work, and whether On the Go's timekeeping methods accurately tracked all time worked for purposes of calculating overtime;

2) the appropriate rate at which overtime should be paid when DAs were paid a day rate (*i.e.* half time or time and a half);

3) whether Defendants would be able to meet their burden of demonstrating that the allegedly unlawful pay system was made in good faith with reasonable grounds for their belief that they were complying with the FLSA pursuant to 29 U.S.C. § 216(b) such that they would avoid the imposition of liquidated damages;

4) whether Amazon would be held liable for the alleged pay violations as a joint employer;

5) whether Plaintiff could maintain a collective action; and

6) whether Plaintiff and/or Defendants would appeal myriad legal or factual determinations, including collective action treatment, liability, and damages.

Ultimately the Gross Settlement Amount that was negotiated and agreed upon represents a compromised resolution on these issues, as well as others, that accounts for the risks that Settlement Collective would face if the case proceeded in litigation and provides certain and immediate and meaningful payment for the individuals who form the Settlement Collective in this case, for the time period during which On the Go paid its DAs on a day rate basis.

### 2.      The Settlement Is Fair and Reasonable

The proposed Settlement in this case meets the standard for approval of an FLSA Settlement because it has been negotiated at arm's length and is a fair and reasonable compromise of disputed issues under *Lynn's Food Stores* and satisfies all of the *Leverso* factors applied by this Circuit to assess fairness and reasonableness of settlement of an FLSA collective action.[4]

### a.      The Parties Fairly and Honestly Negotiated the Settlement and There Was No Fraud or Collusion

The settlement reached represents an excellent result for the Settlement Class Members. There is no fraud or collusion with respect to this proposed Settlement, which was reached after arm's-length negotiations overseen by The Honorable Walter E. Johnson, U.S. Magistrate Judge, including a full day in-person mediation session with Judge Johnson in Rome, Georgia. Agreement ¶ 4.

As described above, the settlement is based on extensive and appropriate

---

[4] In determining whether an FLSA settlement is "fair and reasonable," courts in the Eleventh Circuit may consider the following six factors also used in approving Class Actions under F.R.C.P. 23: "(1) the existence of collusion behind the settlement; (2) the complexity, expense, and likely duration of the case; (3) the stage of the proceedings and the discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel." *Lockwood v. CIS Servs., LLC*, 3:16-cv-965-J-39PDB, 2019 WL 2226126, at *8 (M.D. Fla. May 3, 2019) (citing *Leverso v. SouthTrust Bank of Ala. Nat. Ass'n*, 18 F. 3d 1527, 1530 n. 6 (11th Cir. 1994)); *George v. Academy Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1369 (N.D. Ga. 2019) (applying *Leverso* factors).

investigation, including detailed analyses of the data provided. *See supra* Section II.

Ultimately, represented by experienced Counsel, and with assistance of Magistrate

Judge Johnson, the Parties have agreed to this Settlement as a fair and reasonable

resolution of the action. *See Crabtree*, 2013 WL 593500, at *3 (court's conclusion

that settlement is reasonable is "reinforced by the fact that plaintiffs were ably

represented during the settlement negotiations by capable, experienced counsel with

extensive experience in complex employment law cases."). Accordingly, these

factors support approval of the Settlement.

> **b.** **The Settlement is Fair and Reasonable In View of the Complexity, Expense, and Likely Duration of the Litigation, and the Range of Recovery**

The settlement reached provides an excellent result to Settlement Collective

Members for a relatively brief time period (approximately 32 weeks) when On the

Go paid its DAs on a day rate basis, before it changed its timekeeping and payroll

practices. Declaration of Sarah R. Schalman-Bergen ("Schalman-Bergen Decl.") ¶¶

12. During this 32 week time-period, Settlement Collective Members averaged

approximately seven weeks of work when they worked four or more days in the

workweek. *Id.* Each settlement share (a workweek of four days or more) will be

credited with approximately $30, in addition to the $100 that each Settlement

Collective Member will receive as a minimum amount. *Id.* ¶ 13. These amounts are

significant sums of money to the Settlement Collective Members, who were already paid certain amounts of overtime in addition to their day rate and who, even if they were able to prevail on liability at trial, might receive less. *Id.*

The Settlement provides the Settlement Collective Members a certain, substantial and immediate payment and averts years of continued complex, time-consuming, and expensive litigation, with no assurance of success.  Importantly, the acceptance of this settlement is voluntary—if Settlement Collective Members do not wish to participate in the settlement and do not cash their settlement award, they will not release any claims against Defendants.

### c.    The Stage of the Proceedings and Discovery Completed

Under this factor, the court considers "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *George,* 369 F. Supp. 3d at 1370. "At the same time, '[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations.'" *Id.* at 1371 (citation omitted).

Here, the Settlement was reached after thorough investigation and analysis of the facts and law related to the claims, and continuous development of the facts through interviewing Plaintiff and other collective members and through the

mediation process, including Plaintiff's Counsel's extensive review and analysis of On the Go's payroll and timekeeping data and Amazon's delivery data. Schalman-Bergen Decl. ¶ 9. *See George,* 369 F. Supp. 3d at 1371 ("Class Counsel's review of the payroll, class identification, and other documents produced positioned them to evaluate with confidence the strengths and weaknesses of Plaintiffs' claims…"). Plaintiff's Counsel—who have experience in litigating wage and hour cases like this one—were familiar with the applicable law and facts and with the risks attendant in continuing to pursue the litigation.

### d.    The Risks of Achieving Success on the Merits

"The 'likelihood and extent of any recovery from the defendants absent … settlement' is another important factor in assessing the reasonableness of a settlement." *George,.,* 369 F. Supp. 3d at 1371 (citation omitted). A trial on the merits would involve significant risks for Settlement Collective Members based on the disputed issues identified in Section IV(A)(1), *supra*. In addition, as in any FLSA case, there was a risk that the Settlement Collective Members would not succeed in maintaining a collective through trial. Schalman-Bergen Decl. ¶ 14.

While Plaintiff believes the case was very strong, the outcome of the litigation was far from certain, and would require significant factual development. Moreover, any verdict at trial could be delayed based on any appeals by Defendants. These

likely risks attending to Plaintiff's claims and the certain delay and expense of continued litigation further counsel in favor of final approval of this Settlement.[5]

### 3.    The Proposed Settlement Furthers the Purpose of the FLSA

Finally, the Settlement Agreement contains no provisions that would be contrary to the purposes of the FLSA or frustrate the implementation of the FLSA in the workplace, such as a confidentiality clause or overbroad release. The Settlement Agreement furthers the purposes of the FLSA by providing Collective Members, DAs earning relatively low wages, with substantial recovery for their unpaid wages and overtime they may have otherwise been unable to recover. *See* 29 U.S.C. § 202 (congressional finding and declaration of policy); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945) ("The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency...."). All Settlement Collective Members will receive a settlement award, and will not

---

[5] *See Lockwood*, 2019 WL 2226126, at *9 ("Without a settlement, the parties would have to proceed to trial, and the plaintiffs would risk receiving nothing. The parties and their counsel believe this is a reasonable settlement."); *Crabtree*, 2013 WL 593500, at *3) (finding FLSA settlement reasonable, because even if plaintiffs had prevailed in proving liability, defendant may have prevailed in demonstrating good faith, such that no liquidated damages award was appropriate).

release any claims against Defendants unless they sign, cash, or deposit their Settlement Award check. Agreement ¶¶ 11(n), 13.

Moreover, Settlement Collective Members will receive the proposed Notice of Settlement along with their Settlement Award check. The Notice is clear and straightforward, and provides information on the meaning and nature of the terms and provisions of the Settlement, the monetary awards, the allocation method, the scope of the release, the request for a service award to the Named Plaintiff and for attorneys' fees and costs, the deadline for cashing the settlement award check, and their rights should they not cash the check.

**B.     Final Certification of the Settlement Collective Pursuant to 29 U.S.C. § 216(b) is Appropriate**

The Court should also finally certify the settlement collective pursuant to 29 U.S.C. § 216(b). Courts may implement a one-step approach when certifying a collective as meeting the "similarly situated" requirement for certification of a collective under § 216(b). *Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F. 3d 1208, 1219 (11th Cir. 2001). *See, e.g, Fox v. Tyson Foods, Inc.,* No. 4:99-cv-1612-VEH, 2006 WL 6012784, at *5 (N.D. Ala. Nov. 15, 2006) (certifying a collective in one-step analysis, holding "two-tiered approach" unnecessary where court could make factual determinations on the "similarly situated" issue in light of evidence produced through discovery).

Courts in this district have implemented a one-step approach when certifying a collective for purposes of settlement. *See, e.g., Frazier v. American Health Imaging, Inc.*, 1:16-CV-02148-ELR (N.D. Ga. Sept. 28, 2017) (ECF 27) (attached as Exhibit 2). For example, in the *Frazier* case, after the Court found that the parties' proposed settlement represented a fair and reasonable resolution of their dispute, the Court further ordered that "all Participating Settlement Opt-ins, as defined by the Settlement Agreement, will be deemed by the Court to have consented to this lawsuit and opted into this lawsuit by negotiating a Settlement Check." *Id.*

Further, where, as here, the Settlement resolves only FLSA claims on behalf of a Settlement Collective, Federal Rule of Civil Procedure 23 does not apply, and courts often grant approval of the FLSA settlement via a one-step process.[6] That is because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 class settlement.[7]

---

[6] *See Prena v. BMO Fin. Corp.,* No. 15 Civ. 9175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) ("One step is appropriate because this is an FLSA collective action, where collective members must affirmatively opt-in in order to be bound by the settlement (including the settlement's release provision)."); *Lauture v. A.C. Moore Arts & Crafts, Inc.,* 17-cv-10219-JGD, 2017 WL 6460244, at *1 (D. Mass. June 8, 2017) ("A one-step approval process is appropriate in FLSA settlements that do not include proposed []Rule[]23 class releases.") (collecting cases).

[7] *See Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) ("Rule 23 actions are fundamentally different from class actions under the FLSA"); *Hipp,* 252 F. 3d at 1216 ("In a Rule 23 class action, each person who falls within the class

16

Also, where, as here, Plaintiff is asking the court is to approve an FLSA *settlement*, the court is not required to finally certify the collective in order to approve the settlement as fair and reasonable. Rather, "[i]n deciding whether a settlement is fair and reasonable, no binding precedent requires different treatment of a FLSA *collective* action and a FLSA *individual* action." *Lockwood*, 2019 WL 2226126, at *8 (emphasis added). "Some district courts will consider final certification (*i.e.* whether the plaintiffs are similarly situated), while other district courts deem such consideration unnecessary." *Id.*[8]

Here, the Settlement Collective Members are "similarly situated" for settlement purpose because: (1) DAs worked under the same conditions and compensation policies; (2) were subject to the same alleged unlawful practices in that they worked more than 40 hours per week but, Plaintiff alleges, did not receive

---

definition is considered to be a class member and is bound by the judgment, favorable or unfavorable, unless he has opted out. By contrast, a putative plaintiff must affirmatively opt in to a § 216(b) action by filing his written consent with the court in order to be considered a class member and be bound by the outcome of the action.").

[8] *See also Campbell v. Pincher's Beach Bar Grill Inc.*, No. 2:15-cv-695-FtM-99MRM, 2017 WL 3700629, at *1-2 (M.D. Fla. Aug. 24, 2017), (deeming consideration of final certification unnecessary and concluding that: "On balance, the Court finds persuasive the authorities cited by the parties in which jurists on this Court approved a settlement at the conditional certification stage without requiring a final certification prior to approving a settlement."), *report and recommendation adopted,* 2017 WL 3668889.

overtime compensation; and (3) the same defenses apply to all Members since Defendants deny the allegations in this lawsuit with respect to all DAs. Further, fairness and procedural concerns counsel in favor of final certification, which will enable the Settlement Collective Members to receive compensation for their unpaid wages and overtime without the need to file individual actions.[9]

To the extent necessary, the Court may find collective action treatment pursuant to 29 U.S.C. § 216(b) appropriate for purposes of settlement.

## C. The Service Award to the Named Plaintiff Is Justified and Should Be Approved

The Settlement Agreement provides for a service award to Plaintiff Gaines in the amount of $7,500, to be paid from the Gross Settlement Amount in recognition of her efforts on behalf of the Settlement Collective Members, and in exchange for the additional consideration of the broader release of claims Plaintiff is providing.

"Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation. Such awards are justified when the class representatives

---

[9] Certification of a collective furthers the purposes of §216(b) actions under the FLSA by reducing the burden on plaintiffs though the "pooling of resources" and the "efficient resolution in one proceeding of common issues of law and fact." *Morgan v. Family Dollar Stores, Inc.,* 551 F. 3d 1233, 1264-65 (11th Cir. 2008) (citing *Hoffmann-La Roche, Inc. v. Sperling,* 493 U.S. 165, 170 (1989)).

expend time and effort on the case, especially by advising counsel . . . ." *Ingram v. The Coca-Cola Co.,* 200 F.R.D. 685, 694 (N.D. Ga. 2001) (citation omitted) (collecting cases). "Service awards to representative plaintiffs in FLSA-only collective actions are similarly warranted." *George*, 369 F. Supp. 3d at 1374 n.3.

In examining the reasonableness of a requested service award, courts consider: (1) the actions the plaintiff has taken to protect the interests of the class, (2) the degree to which the class has benefited from those actions, and (3) the amount of time and effort the plaintiff expended in pursuing the litigation. *George,,* 369 F. Supp. at 1374 (citing *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir 1998)). These factors are satisfied here. Plaintiff Gaines worked with Counsel, providing background information about her employment, about Defendants' policies and practices, and about the allegations in this lawsuit through countless phone calls throughout this litigation. Plaintiff Gaines agreed to put her name on a lawsuit in the public docket, and, in an environment with very little job stability, and has undertaken a substantial direct and indirect risk in the community and in her field of employment by being the face of the litigation in order to participate in this case on behalf of the Collective Members. *See* Schalman-Bergen Decl. ¶ 16.[10]

---

[10] *See Sand v. Greenberg*, No. 08-cv-7840, 2011 WL 7842602, at *3 (S.D.N.Y. Oct. 6, 2011) (approving service awards in FLSA case as reasonable and finding that

Settlement Collective Members will receive a significant benefit for Plaintiff's service in the form of monetary compensation for back wages. Her efforts advanced and supported the positions of the entire Collective, and directly and positively contributed to the factual arguments that were used to obtain the settlement and recovery. In exchange for her service award, Plaintiff Gaines is also providing a broader release of claims to Defendants. Schalman-Bergen Decl. ¶ 15.

Finally, the service award requested in this case is in line with those approved in wage and hour collective and class actions by courts in this Circuit and others, and should be approved as reasonable.[11]

### D. The Court Should Approve Plaintiff's Counsel's Fees and Approve Reimbursement of their Out-of-Pocket Costs

Finally, Plaintiff's Counsel's fee and cost request, which were separately negotiated during the mediation, is reasonable and should be approved. Plaintiff's

---

plaintiffs "took risks by putting their names on this lawsuit," including the risk of "blacklisting and other more subtle forms of retaliation"); *Craig v. Rite Aid Corp.*, No. 4:08-cv-2317, 2013 WL 84928 at *13 (M.D. Pa. Jan. 7, 2013) ("[N]amed plaintiffs in FLSA or state wage and hour claims are often retaliated against in the industry as a result of their obvious participation in such litigation.").

[11] *See, e.g., Prowant v. Fannie Mae*, No. 1:14-cv-03799-AT [Dkt. 109] (N.D. Ga. Nov. 27, 2018) (approving $10,000 service payments to each named plaintiff in FLSA collective action settlement); *Crankshaw,* 2018 U.S. Dist. LEXIS 42788, at *11 (approving $9,250 service payment); *Tam Su v Elec. Arts, Inc.*, No 6:05-cv-131-Orl-28JGG, 2006 WL 4792780, at *5 (M.D. Fla. Aug. 29, 2006) (approving $10,000 service payment); *George,* 369 F. Supp. 3d at 1374 (approving service award of $7,500 to the named plaintiff).

Counsel's requested fee was carefully negotiated by the Parties under the oversight and with the assistance of the mediator, U.S. Magistrate Judge Johnson. "When parties engage in arm's length negotiations to arrive at a mutually agreeable amount of attorneys' fees, the Court should give considerable weight to the parties' agreement." *In re Arby's Rest. Grp., Inc. Data Security Litig.*, No. 1:17-cv-1035-WMR, 2019 WL 2720818, at *2 (N.D. Ga. June 6, 2019) (Ray, II, J.).

District courts in this Circuit have held that the court's scrutiny of the reasonableness of the fees is unnecessary in an FLSA settlement where "the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff," except in circumstances where "the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney." *Bonetti v. Embarq Mgmt. Co*., 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009).[12]  Here, the

---

[12] *See also Urbas v. Nutritious Lifestyles, Inc*., No. 3:19-cv-855-J-34PDB, 2020 WL 264686, at *3 (M.D. Fla. Jan. 2, 2020) ("If the parties negotiated attorney's fees separately from the amount to the plaintiff, the court need not undertake a lodestar review of the attorney's fees for reasonableness"); *Campbell,*, 2017 WL 3700629, *4 ("If these matters are addressed independently and seriatim, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement."); *Wing v. Plann B. Corp*., No. 6:11–cv–1499–Orl–36GJK, 2012 WL 4746258, at *4 (M.D. Fla. Sept 17, 2012) (declining to examine reasonableness of attorney's fee payment in FLSA settlement where "Plaintiff's claims were resolved separately and apart from the issue of attorneys' fees," such that "there is  no reason

fees were separately negotiated based on Plaintiff's Counsel's lodestar, which portion was ultimately included in the Gross Settlement Amount. For this reason, the Court need not separately evaluate the reasonableness of the fee award in approving the settlement.

### 1.    Plaintiff's Counsel Fees Sought Are Reasonable

To the extent the Court engages in an analysis of the reasonableness of the fee, the Eleventh Circuit uses the lodestar approach elected by the U.S. Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) as a "starting point" because it yields an "objective estimate of the value of a lawyer's services." *Norman v. Housing Auth. of Montgomery*, 836 F. 2d 1292, 1299 (11th Cir. 1988). The lodestar is calculated by "multiply[ing] hours reasonably expended by a reasonable hourly rate." *Id.* (citing *Hensley*, 461 U.S. at 433).

Courts in this circuit have applied the *Hensley* lodestar framework to fee-award determinations for claims brought under the FLSA. *See, e.g., Lockwood*, 2019 WL 2226126, at *13; *Reams,* 2019 WL 6898656, at *3 (applying lodestar approach to FLSA settlement agreement). The lodestar approach may also be used to "cross-

---

to believe that Plaintiff's recovery was adversely affected by the amount of fees and costs to be paid to Plaintiff's counsel."); *Barbee v. Kochg River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019) (held that the FLSA does not require court approval for attorneys' fees as the statute treats the merits of a claim and attorneys' fees as distinct.).

check" the reasonableness of the fee "[e]ven when utilizing the percentage of the common fund approach." *Arby's*, 2019 WL 2720818, at *2.

Here, Plaintiff's Counsel's requested attorney' fee of $83,333.33 is *significantly less* than their actual current lodestar of $220,958.50, or approximately 38% of the lodestar. Schalman-Bergen Decl. ¶¶ 25-26; Declaration of Ryan Hancock.[13] "This fact, standing alone, strongly suggests that the amount of fees requested here are reasonable and fair." *Arby's,* 2019 WL 2720818, at *3. Moreover, the requested fee does not account for all of the work that will be necessary to bring this Settlement to completion, which will further increase the actual lodestar (but not the fee), thereby further reducing the fee as percentage of lodestar.[14]

---

[13] Plaintiff's Counsel have attached the Declarations of Sarah R. Schalman-Bergen and Ryan Allen Hancock, which detail the time worked by their firms on this lawsuit, with descriptions of the work performed, along with the hourly billing rates of the legal professionals who were assigned to the case. Plaintiff's Counsel has expended over 496.2 hours and incurred attorneys' fees in the total amount of $220,958.50 from inception of this litigation to date, not including the additional work that will be necessary to finalize the settlement and bring this case to a conclusion. Plaintiffs' Counsel's hourly rates are reasonable and have been approved by Courts across the country. *See* Schalman-Bergen Decl. ¶ 25; Hancock Decl. ¶¶ 8-9.

[14] *Crankshaw*, 2018 U.S. Dist. LEXIS 42788, at *15-16 (approving "compromise fee" of $300,000 which was less than plaintiffs' counsel's lodestar of $435,716.50, especially since results achieved were excellent considering possibility of non-recovery); *Tam Su,* 2006 WL 4792780, at *5 (finding negotiated fee reasonable where fee sought was *less* than actual lodestar and uncontested by defendants); *Reams,* 2019 WL 6898656, at *4 (awarding requested fee which was *less* than the lodestar, because "[t]he lodestar is 'presumed to be the reasonable fee,'").

The requested fee also comports with those awarded in similar cases. Despite the risks described above, Plaintiff took and pursued this case on a contingency basis, "assum[ing] the risk of nonpayment or underpayment to take this case." *Arby's,* 2019 WL 2720818, at *4 (collecting cases). Indeed, "[a]wards of up to 33% of the common fund are not uncommon in the Eleventh Circuit, and especially in cases where Class Counsel assumed substantial risk by taking complex cases on a contingency basis." *Id.* (citation omitted) (collecting cases awarding one-third of settlement fund in the Northern District of Georgia). *George,* 369 F. Supp 3d at 1382 ("Plaintiffs' request for approval of Class Counsel's 33% fee falls within the range of the private marketplace where contingency-fee arrangements are often between 30 and 40 percent of any recovery.").

The time spent was reasonable in light of the circumstances, was the result of arms' length negotiation with Defendants, and ultimately, the requested fee award is significantly lower than Plaintiff's Counsel's expended lodestar, and will also compensate Plaintiff's Counsel for all of the unpaid work performed in service of securing an excellent settlement for the Settlement Collective Members. The Court should approve the requested attorneys' fees as fair and reasonable.

## 2.   Plaintiff's Counsel's Out-of-Pocket Costs are Reasonable

In addition to being entitled to reasonable attorneys' fees, the FLSA provides

for reimbursement of costs. *See* 29 U.S.C. § 216(b) ("The court [], in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action."). Plaintiff's Counsel's seeks reimbursement of costs totaling $6,323.00, which are detailed in Plaintiff's Counsel's accompanying Declarations. *See* Schalman-Bergen Decl. ¶¶ 28-30; Hancock Decl. ¶ 12. These costs include reasonable out-of-pocket expenditures. *See, e.g.*, *Reams,* 2019 WL 6898656, at *4 (reimbursing counsel's payments for filing and mediation fees); *George,* 369 F. Supp. 3d at 1383 (reimbursing class counsel for expenses paid and, noting that Class Counsel had lost the use of that money during the time of the litigation).

The expenses reflected in the accompanying Declarations are of the type typically billed by attorneys to paying clients, and include court costs, travel costs, and computerized legal research. All expenses were reasonable and necessary for the prosecution of this litigation. Plaintiff's Counsel advanced these costs, with the significant likelihood of no recovery. These costs should be approved as reasonable.

## V.    CONCLUSION

Based upon the foregoing reasons, Plaintiff respectfully requests that the Court grant her unopposed Motion and enter the accompanying Proposed Order.

Dated: June 19, 2020                    Respectfully submitted,

                                        **BERGER MONTAGUE PC**

                                        /s Sarah R. Schalman-Bergen
                                        Sarah R. Schalman-Bergen
                                        Camille Fundora Rodriguez
                                        Krysten Connon
                                        **BERGER MONTAGUE PC**
                                        1818 Market Street, Suite 3600
                                        Philadelphia, PA 19103
                                        Telephone: (215) 875-3000
                                        Facsimile: (215) 875-4604
                                        sschalman-bergen@bm.net
                                        crodriguez@bm.net
                                        kconnon@bm.net

                                        Ryan Allen Hancock
                                        **WILLIG, WILLIAMS & DAVIDSON**
                                        1845 Walnut Street, 24th Floor
                                        Philadelphia, PA 19103
                                        Telephone: (215) 656-3600
                                        rhancock@wwdlaw.com

                                        Blake Andrews
                                        **BLAKE ANDREWS LAW FIRM, LLC**
                                        1831 Timothy Drive
                                        Atlanta, Georgia 30329
                                        Telephone: (770) 828-6225
                                        blake@blakeandrewslaw.com

                                        *Attorneys for Plaintiff and the FLSA*
                                        *Collective*

26