IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **FELICIA GAINES, on behalf of herself and others similarly situated,** | **Case No. 1:19-cv-00528-WMR** |
| **Plaintiff,** | |
| **v.** | |
| **AMAZON.COM, LLC AMAZON LOGISTICS, INC., and ON THE GO EXPRESS, LLC,** | |
| **Defendants.** | |

**DECLARATION OF SARAH R. SCHALMAN-BERGEN
IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR
APPROVAL OF THE SETTLEMENT AGREEMENT AND
ATTORNEYS' FEES AND COSTS**

I, Sarah R. Schalman-Bergen, hereby declare that the following is true and correct:

1.     I am a member in good standing of the bar of the Commonwealth of Pennsylvania, and I am admitted *pro hac vice* to this Court for this action. I am a shareholder at Berger Montague PC ("Berger Montague") and along with Willig Williams & Davidson, represent Plaintiff and the Settlement Collective in the above-captioned litigation.

2.     Berger Montague specializes in class action litigation in federal and state courts and is one of the preeminent class action law firms in the United States. I have attached a copy of our firm's resume hereto as Exhibit A. Berger Montague currently employs approximately 66 attorneys, plus staff who represent plaintiffs in complex and class action litigation. Our firm's Employment Department has considerable experience representing employees in class action and collective action litigation. Berger Montague has played lead roles in major class action cases for over 48 years, resulting in recoveries totaling many billions of dollars for our firm's clients and the classes they represent.

3.     I am Co-Chair of the firm's Employment Rights Department, and I have an extensive background in litigation on behalf of employees. I am currently serving as lead or co-lead counsel in dozens of wage and hour class and collective actions in federal courts across the country, including unpaid wage cases similar to this case. This level of expertise enabled Berger Montague to undertake this matter and to successfully prosecute these claims on behalf of Plaintiffs and the Settlement Collective and to reach a fair and reasonable $250,000,00 settlement in an efficient manner.

4.     Berger Montague's Employment Law Group is repeatedly recognized for outstanding success in effectively representing its clients. In 2015, the National

Law Journal selected Berger Montague as the top plaintiffs' law firm in the Employment Law Category in its "Elite Trial Lawyer" awards. The nomination criteria for this award required that a firm score at least one significant plaintiffs' win in the preceding year, and possess an impressive track record of wins within the past three to five years. Portfolio Media, which publishes Law 360, also recognized Berger & Montague as one of the eight Top Employment Plaintiffs' Firms in 2009.

5.      Practice in the narrow area of wage and hour class and collective action litigation requires skill, knowledge, and experience in two distinct subsets of the law. Expertise in one does not necessarily translate into expertise in the other. Plaintiff's Counsel in such cases – in order to be successful – must have deep expertise in both. The issues presented in this case required more than just a general appreciation of wage and hour law and class and collective action procedure, as this areas of practice is still developing.

6.      My firm served as co-lead counsel in the case with Willig, Williams & Davidson. Our firms worked together on the case and divided work tasks so as to avoid duplication of effort in representing Plaintiff and Settlement Collective Members.

7.      I respectfully submit this declaration in support of Plaintiff's Unopposed Motion for Approval of the Settlement Agreement and Attorneys' Fees

and Costs. The following is based on my personal knowledge, and if called upon to do so, I could and would competently testify thereto.

## Relevant Settlement Background

8.     Plaintiff worked as a Delivery Associate in Georgia, and filed this case on January 31, 2019, alleging Defendants failed to pay Delivery Associates overtime compensation when they worked more than 40 hours in a workweek, in violation of the FLSA. In April 2019, the Parties agreed to stay this matter so they could participate in an alternative dispute resolution ("ADR") process in an effort to resolve Plaintiff's collective action claims. (ECF Nos. 16, 17)

9.     On March 13, 2020, the Parties participated in a full-day in-person mediation session in the Courthouse in Rome, Georgia, conducted by the Honorable Walter E. Johnson, U.S. Magistrate Judge. Prior to the mediation, Defendants provided Plaintiff's Counsel with On the Go's payroll data and timekeeping data, and Amazon's delivery data ("Rabbit" data) for DAs who were paid by On the Go and delivered packages to Amazon's customers, which Plaintiff's Counsel reviewed and analyzed extensively, with the assistance of their in-house Data Analyst.[1] The

---

[1] Investigation and analysis of On the Go's payroll information during the course of litigation and through the structured ADR process revealed that On the Go did pay overtime in addition to a day rate. The settlement reached by the parties reflects Plaintiff's analysis and allegations that On the Go did not track all hours worked during the time period when they paid a day rate.

Parties engaged in numerous meet and confer sessions regarding the facts and data prior to the mediation.

10.     As a result of the mediation and continued arm's length negotiations, the Parties agreed to settle the claims according to the terms of this Settlement Agreement. The Parties separately negotiated the wage damages and attorneys' fees and costs. The Gross Settlement Amount of $250,000 was carefully negotiated based on a thorough investigation and analysis of the facts and law related to the claims, and continuous development of the facts, including through interviewing Plaintiff and other collective members, and review and analysis of On the Go's payroll and timekeeping data and Amazon's delivery data produced during the mediation process.

11.   I believe that the settlement is fair and reasonable and in the best interests of the Settlement Collective. The Settlement Agreement offers significant advantages over the continued prosecution of this case. The settlement provides the Settlement Collective Members with a certain, substantial, and immediate payment and averts years of continued complex, time-consuming, and expensive litigation, with no assurance of success. Importantly, the acceptance of this settlement is voluntary – if Settlement Collective Members do not wish to participate in the

settlement and do not cash their settlement award, they will not release any claims against Defendants.

12.     More specifically, the Settlement reached provides an excellent result to Settlement Collective Members for a relatively brief time period (approximately 32 weeks) when On the Go paid its Delivery Associates on a day rate basis, before it changed its timekeeping and payroll practices. During this 32 week time period, Settlement Collective Members averaged approximately seven weeks of work when they worked four or more days in the workweek.

13.     Each Settlement share (a workweek of four days or more) will be credited with approximately $30, in addition to the $100 that each Settlement Collective Member will receive as a minimum amount. These amounts are significant sums of money to the Settlement Collective Members, who were already paid certain amounts of overtime in addition to their day rate and who, even if they were able to prevail on liability at trial, might receive less.

14.     A trial on the merits would involve significant risks for Settlement Collective Members based on the disputed issues in this case. The Parties disagreed on numerous legal and factual issues that would have impacted the case moving forward. In addition, as in any FLSA case there was a risk that the Settlement Collective Members would not succeed in maintaining a collective through trial.

15.     In addition, the Settlement Agreement provides for a service award to Named Plaintiff Felicia Gaines in the amount of $7,500.00 to be paid from the Gross Settlement Amount in recognition of her efforts on behalf of the Settlement Collective Members, and in exchange for the additional consideration of the broader release of claims Plaintiff is providing.

16.     Plaintiff Gaines worked with Plaintiff's Counsel, providing background information about her employment, about Defendants' policies and practices, and about the allegations in this lawsuit through countless phone calls throughout this litigation. Plaintiff Gaines agreed to put her name on a lawsuit in a public docket, and in an industry with very little job stability, and has undertaken a substantial direct and indirect risk in the community and in her field of employment by being the face of the litigation in order to participate in this case on behalf of the Collective Members.

17.     Settlement Collective Members will receive a significant benefit for Plaintiff's service in the form of monetary compensation for back wages. Plaintiff's efforts advanced and supported the positions of the entire Collective, and directly and positively contributed to the factual arguments that were used to obtain the settlement and recovery. In exchange for her service award, Plaintiff Gaines is also providing a broader release of claims to Defendants.

18.     Plaintiff's Counsel agreed to represent Plaintiff on a contingency fee basis and was prepared to invest time, effort and money over a period of years with absolutely no guarantee of any recovery. Plaintiff's Counsel would not have recovered any of their fees and out-of-pocket costs had they not obtained a settlement or prevailed at trial.

19.     The risks Plaintiff's Counsel undertook were real, and the resources that Plaintiff's Counsel dedicated to this lawsuit meant that such resources were not available to other cases. Plaintiff's Counsel's contingency risk, together with the excellent result that has been achieved on behalf of the Settlement Collective Members, supports the requested fees and costs.

### BERGER MONTAGUE'S LODESTAR AND PLAINTIFF'S COUNSEL'S TOTAL LODESTAR

20.     In my exercise of billing judgment, I have reviewed the billing records maintained in this case, and I have exercised billing discretion and removed hours spent by attorneys and staff at my firm if I deemed such time to be redundant or duplicative, or if it reflected less than ten (10) hours of work by the biller. This resulted in a reduction of 10.3 hours. After the exercise of such billing judgment, as of June 11, 2020, the total number of recorded hours spent on this litigation by Berger Montague is 452.3, and the lodestar amount for attorney and support staff time, based on the firm's current rates, is $202,416.00. The hourly rates shown below

are the usual and customary rates charged for each individual in all of our cases. A breakdown of my firm's lodestar from inception of the case to date is reflected below:

| Name | Position | Hours | Rate | Lodestar |
|---|---|---|---|---|
| Sarah R. Schalman-Bergen | Shareholder | 61.6 | $645 | $39,732.00 |
| Phyllis M. Parker | Shareholder | 57.9 | $640 | $37,056.00 |
| Camille Fundora Rodriguez | Associate | 29.7 | $510 | $15,147.00 |
| Krysten L. Connon | Associate | 66.0 | $485 | $32,010.00 |
| Alexandra K. Piazza | Associate | 15.8 | $485 | $7,663.00 |
| Deanna Kemler | Data Analyst | 164.9 | $340 | $56,066.00 |
| Alex Grayson | Paralegal | 46.1 | $255 | $11,755.00 |
| Stefana Klipa | Paralegal | 10.3 | $255 | $2,987.00 |
| **Total** | | 452.3 | | **$202,416.00** |

21.    Due to the amount of privileged information contained in Berger Montague's actual hourly billing records, those detailed records are not attached here, but can easily be provided for this Court's *in camera* review should the Court wish to review them.

22.    The hourly rates for the partners, attorneys, and professional staff are the same as would be charged in non-contingent matters and/or which have been accepted and approved by federal courts around the country in other wage and hour class and collective action cases. *See e.g.*, *Merino et al. v. Wells Fargo & Company et al.*, No. 2:16-cv-07840-ES-MAH (D.N.J. Jan. 15, 2020); *Brewer v. Homeland Vinyl Products, Inc.*, No. 1:17-cv-04290-NLH-KMW (D.N.J. Sept. 10, 2019);

*Holbert v. Waste Management, Inc*., No 2:18-cv-02649-CMR (E.D. Pa. Aug. 7, 2019); *Shaw, et al. v. AMN Servs., LLC*, No. 3:16-cv-02816 (N.D. Cal. May 31, 2019) (conducting lodestar cross check and holding "[t]he Court further finds that the hourly rates of Class Counsel's co-counsel, Berger Montague PC, also are within the prevailing range of hourly rates charged by attorneys providing similar services in class action, wage-and-hour cases"); *Scolaro v. RightSourcing, Inc*., No. 8:16-cv-01083 (C.D. Cal. June 26, 2017) (approving Berger Montague's hourly rates); *Lopez v. T/J Inspection, Inc.*, No. 5:16-cv-148 (W.D. Okla. April 12, 2017);. *Devlin v. Ferrandino & Son, Inc.*, No. 15-4976, 2016 WL 7178338, at *2 (E.D. Pa. Dec. 9, 2016) (approving billing rates, and holding that Berger Montague attorneys "have substantial experience in FLSA cases and their hourly rates are also within the range charged by attorneys with comparable experience levels for litigation of a similar nature."). *Fenley v. Applied Consultants, Inc.*, No. 2:15-cv-259-MRH (W.D. Pa. June 17, 2016); *Dunkel v. Warrior Energy Serv., Inc.*, No. 2:13-cv-695-MRH (W.D. Pa. Apr. 15, 2016); *Niver v. Specialty Oilfield Sols.*, No. 14-1599-JFC (W.D. Pa. Oct. 7, 2015); *Ciamillo v. Baker Hughes, Inc.*, No. 3:14-cv-00081-RRB (D. Alaska June 19, 2015); *Thompson v. Peak Energy Servs. USA, Inc.*, No. 13-cv-266 (W.D. Pa. Nov. 19, 2014); *Hively v. Archer Well Co., Inc. et al.*, No. 13-cv-106 (W.D. Pa. Aug. 12, 2014); *Stivers v. Office Depot*, No. 12-cv-1534 (W.D. Pa. Sept. 19, 2013);

*Crawford v. Zenta Mortg. Servs. LLC,* No. 3:11-cv-129 (W.D.N.C. Jan. 16, 2013);

*Bearden v. Precision Air Drilling Servs., Inc.*, No. 2:11-cv-01511-NBF (W.D. Pa. Sept. 26, 2012); *Thomas v. Allis-Chalmers*, No. 2:10-cv-01591-RCM (W.D. Pa. Sept. 11, 2012); *Choul v. Nebraska Beef, Ltd.*, No. 8:10-cv-308 (D. Neb. May 17, 2012).

23.    The time reflected above was time actually spent, in the exercise of reasonable judgment, by the attorneys and staff involved. Plaintiff's Counsel was careful not to expend unnecessary hours and not to duplicate work done by others. The time submitted herein reflects only work done on behalf of the Settlement Collective Members.

24.    In addition to Berger Montague's time reported above, Plaintiff's Counsel Blake Andrews Law has spent a total of 24.3 hours prosecuting this litigation, with a total lodestar of $10,327.50.

25.    In sum, as reported above, and based also on the Declaration of Plaintiff's Counsel Ryan Allen Hancock submitted in support of this Motion, Plaintiff's Counsel have spent a total of more than 496.2 hours prosecuting this litigation since our investigation first began. Plaintiff's Counsel's current lodestar is approximately $220,958.50.

26.     Plaintiff's Counsel's requested attorneys' fees of $83,333.33 is, therefore, *less* than their actual current lodestar of $220,958.50, or approximately 37.71% of the lodestar. This lodestar does not include the additional work that will be necessary to bring this settlement to a conclusion.

### BERGER MONTAGUE'S EXPENSES AND PLAINTIFF'S COUNSEL'S TOTAL EXPENSES

27.     This litigation required my firm to advance costs. Because the risk of advancing costs in this type of litigation is significant, doing so is often cost prohibitive to many attorneys.

28.     As of June 11, 2020, my firm expended costs in the amount of $6,133.41 to prosecute this action, as follows:

| Expense | Amount |
|---|---|
| Computer Research | $1,905.09 |
| Copying | $464.20 |
| Telephone | $2.71 |
| Travel, Hotel, & Meals | $3,489.21 |
| Electronic Signature Service | $37.20 |
| Transcripts | $235.00 |
| **Total** | **$6,133.41** |

29.     In addition, Plaintiff's Counsel Blake Edwards Law has spent a total of $850.00 in out-of-pocket expenses prosecuting this litigation.

30.     In sum, as reported above, and based also on the Declaration of Ryan Allen Hancock submitted in support of this Motion, Plaintiff's Counsel has spent a

total of approximately $7,261.41 in out-of-pocket expenses prosecuting this litigation since our investigation first began. However, pursuant to the Settlement Agreement, Plaintiff's Counsel is only requesting $6,323.00 for reimbursement of out-of-pocket costs.

31.     The expenses incurred pertaining to this case are reflected in the books and records of this firm. These books and records are prepared from expense vouchers and check records and are an accurate record of the expenses incurred. All of the expenses incurred were reasonable and necessary to the prosecution of this case.

## SUMMARY OF WORK PERFORMED BY BERGER MONTAGUE

32.     I am the lead Shareholder at Berger Montague with respect to this case. I directed the work of the other attorneys at my firm, conducted a legal analysis of the facts presented by this case, worked with co-counsel, and was the lead attorney in corresponding and conferring with opposing counsel throughout the litigation. In this capacity, I: 1) conducted the initial case investigation; 2) oversaw, managed, assigned and coordinated duties of a team of attorneys throughout this litigation; 3) devised and implemented strategy and participated in meetings and numerous telephone conferences with Defendants' counsel related to the litigation and settlement; 4) coordinated the review of Defendants' documents; 5) reviewed the

damages analyses in preparation for mediations; 6) was the lead attorney at the in-person mediation on March 13, 2020 in the Courthouse in Rome, Georgia conducted by the Honorable Walter E. Johnson, U.S, Magistrate Judge, and during settlement negotiations; 7) negotiated the details and terms of the Settlement Agreement; 8) edited and finalized the Settlement Agreement; 9) drafted status reports to the Court; and 10) edited a number of the briefs in this case, including Plaintiff's Unopposed Motion for Approval of the Settlement Agreement and Attorneys' Fees and Costs.

33.    Below, I provide a summary description of the work performed by each of the Berger Montague attorneys or staff on this case who billed at least ten hours on this matter.

34.    As of June 11, 2020, an associate of our firm, Krysten L. Connon, billed 66 hours to this case. Ms. Connon researched relevant issues for litigation; drafted initial disclosures, status reports, developed mediation strategy, reviewed and prepared documents for mediation, assisted in preparing mediation statement, finalized the mediation statement and Memorandum of Understanding ("MOU"); prepared, traveled to and participated in mediation in Rome, Georgia on March 13, 2020, and participated in follow-up meet and confer settlement sessions, and reviewed the damages analyses; and edited various motions and supporting documents.

35.    As of June 11, 2020, an associate of our firm, Camille Fundora Rodriguez, billed 29.7 hours to this case. Ms. Rodriguez assisted in litigation strategy; drafting, editing, filing, and serving the complaint; and edited various motions and supporting documents, including for approval of settlement.

36.    As of June 11, 2020, an associate of our firm, Alexandra K. Piazza, billed 15.8 hours to this case. Ms. Piazza researched relevant issues in the litigation, including investigation of claims; reviewed documents, summary reports and pleadings; assisted in preparation for mediation, including editing the MOU and mediation statement; drafted settlement agreement.

37.    As of June 11, 2020, a shareholder of our firm, Phyllis M. Parker, billed 57.9 hours to this case. Ms. Parker conducted legal research, and drafted the motion for approval of the settlement and attorneys' fees and costs, including the memorandum of law in support thereof, and all other supporting documents.

38.    As of June 11, 2020, a data analyst of our firm, Deanna Kemler billed 164.9 hours to this case. Ms. Kemler prepared and calculated the damages analyses and settlement awards based on the data and information provided by Defendants.

39.    As of June 11, 2020, a paralegal of our firm, Alex Grayson billed 46.1 hours to this case. Mr. Grayson reviewed client and collective members' documents, assisted in editing various pleadings, declarations, drafted various letters and forms,

assisted in researching various litigation issues, assisted in review and management of documents received from Defendants, assisted in preparation for mediation, and was the line of contact for Named Plaintiff and Collective Members.

40.     As of June 11, 2020, a paralegal of our firm, Stefana Klipa, billed 10.3 hours to this case. Ms. Klipa reviewed client and collective members' documents; managed document production from Defendants, drafted various letters, assisted in preparation for mediation, including preparing charts, and, together with Mr. Grayson (above), was the line of contact for Collective Members.

41.     All the work described above was reasonable and necessary to the prosecution and settlement of this case. Plaintiff's Counsel collectively conducted an extensive factual investigation during the prosecution of this action. Through comprehensive evaluation of the facts and law and extensive arm's length negotiations, Plaintiff's Counsel was able to settle this case for a substantial sum. Plaintiff's Counsel achieved this result in a very timely fashion, providing members of the Settlement Collective with substantial and certain relief much sooner than if this matter had been extensively litigated.

42.     The settlement reached with Defendants through the ADR process, which involves complex provisions that are specific to class and collective action litigation of wage and hour law, is a reflection of Plaintiff's Counsel's experience.

The Settlement Agreement provides members of the Settlement Collective with substantial benefits without having to wait for years of drawn-out litigation. Based upon the foregoing reasons, Plaintiff's Counsel respectfully requests that this motion be granted.

Dated: June 19, 2020                    /s/ Sarah R. Schalman-Bergen
                                        Sarah R. Schalman-Bergen

# EXHIBIT A



1818 Market Street | Suite 3600 | Philadelphia, PA 19103
info@bm.net
bergermontague.com
800-424-6690

## About Berger Montague

Berger Montague is a full-spectrum class action and complex civil litigation firm, with nationally known attorneys highly sought after for their legal skills. The firm has been recognized by courts throughout the country for its ability and experience in handling major complex litigation, particularly in the fields of antitrust, securities, mass torts, civil and human rights, whistleblower cases, employment, and consumer litigation.  In numerous precedent-setting cases, the firm has played a principal or lead role.

The *National Law Journal,* which recognizes a select group of law firms each year that have done "exemplary, cutting-edge work on the plaintiffs' side," has selected Berger Montague in 12 out of 14 years (2003-05, 2007-13, 2015-16) for its "Hot List" of top plaintiffs' oriented litigation firms in the United States. In 2018 and 2019, the *National Law Journal* recognized Berger Montague as "Elite Trial Lawyers" after reviewing more than 300 submissions for this award. The firm has also achieved the highest possible rating by its peers and opponents as reported in *Martindale-Hubbell* and was ranked as a 2020 "Best Law Firm" by *U.S. News - Best Lawyers.*

Currently, the firm consists of 66 lawyers; 25 paralegals; and an experienced support staff.  Few firms in the United States have our breadth of practice and match our successful track record in such a broad array of complex litigation.

## History of the Firm

Berger Montague was founded in 1970 by the late David Berger to concentrate on the representation of plaintiffs in a series of antitrust class actions.  David Berger helped pioneer the use of class actions in antitrust litigation and was instrumental in extending the use of the class action procedure to other litigation areas, including securities, employment discrimination, civil and human rights, and mass torts.  The firm's complement of nationally recognized lawyers has represented both plaintiffs and defendants in these and other areas and has recovered billions of dollars for its clients.  In complex litigation, particularly in areas of class action litigation, Berger Montague has established new law and forged the path for recovery.

The firm has been involved in a series of notable cases, some of them among the most important in the last 50 years of civil litigation.  For example, the firm was one of the principal counsel for

1

plaintiffs in the *Drexel Burnham Lambert/Michael Milken* securities and bankruptcy litigation. Claimants in these cases recovered approximately $2 billion in the aftermath of the collapse of the junk bond market and the bankruptcy of *Drexel* in the late 1980's.  The firm was also among the principal trial counsel in the *Exxon Valdez Oil Spill* litigation in Anchorage, Alaska, a trial resulting in a record jury award of $5 billion against Exxon, later reduced by the U.S. Supreme Court to $507.5 million.  Berger Montague was lead counsel in the *School Asbestos Litigation*, in which a national class of secondary and elementary schools recovered in excess of $200 million to defray the costs of asbestos abatement.  The case was the first mass tort property damage class action certified on a national basis.  Berger Montague was also lead/liaison counsel in the *Three Mile Island Litigation* arising out of a serious nuclear incident.

Additionally, in the human rights area, the firm, through its membership on the executive committee in the *Holocaust Victim Assets Litigation*, helped to achieve a $1.25 billion settlement with the largest Swiss banks on behalf of victims of Nazi aggression whose deposits were not returned after the Second World War.  The firm also played an instrumental role in bringing about a $4.37 billion settlement with German industry and government for the use of slave and forced labor during the Holocaust.

## Judicial Praise for Berger Montague Attorneys

Berger Montague's record of successful prosecution of class actions and other complex litigation has been recognized and commended by judges and arbitrators across the country.  Some remarks on the skill, efficiency, and expertise of the firm's attorneys are excerpted below.

**Antitrust**

From **Judge Margo K. Brodie,** of the U.S. District Court for the Eastern District of New York:

> "Class counsel has without question done a tremendous job in litigating this case. They represent some of the best plaintiff-side antitrust groups in the country, and the size and skill of the defense they litigated against cannot be overstated. They have also demonstrated the utmost professionalism despite the demands of the extreme perseverance that this case has required…"

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, No. 1:05-md-01720 (E.D.N.Y. 2019) (Mem. & Order).

From **Judge Brian M. Cogan**, of the U.S. District Court of the Eastern District of New York:

> "This is a substantial recovery that has the deterrent effect that class actions are supposed to have, and I think it was done because we had really good Plaintiffs' lawyers in this case who were running it."

Transcript of June 24, 2019 Fairness Hearing, *In re Dental Supplies Antitrust Litigation*, No. 16-cv-696 (E.D.N.Y.).

From **Judge Michael M. Baylson**, of the U.S. District Court of the Eastern District of Pennsylvania:

> "[C]ounsel…for direct action plaintiffs have done an outstanding job here with representing the class, and I thought your briefing was always very on point. I thought the presentation of the very contentious issues on the class action motion was very well done, it was very well briefed, it was well argued."

Transcript of the June 28, 2018 Hearing in *In re Domestic Drywall Antitrust Litigation*, No. MD-13-2437 at 11:6-11.

From **Judge Madeline Cox Arleo,** of the U.S. District Court for the District of New Jersey praising the efforts of all counsel:

> "I just want to thank you for an outstanding presentation.  I don't say that lightly . . . it's not lost on me at all when lawyers come very, very prepared.  And really, your clients should be very proud to have such fine lawyering.  I don't see lawyering like this every day in the federal courts, and I am very grateful.  And I appreciate the time and the effort you put in, not only to the merits, but the respect you've shown for each other, the respect you've shown for the Court, the staff, and the time constraints.  And as I tell my law clerks all the time, good lawyers don't fight, good lawyers advocate.  And I really appreciate that more than I can express."

Transcript of the September 9 to 11, 2015 Daubert Hearing in *Castro v. Sanofi Pasteur*, No. 11-cv-07178 (D.N.J.) at 658:14-659:4.

From **Judge William H. Pauley, III**, of the U.S. District Court of the Southern District of New York:

> "Class Counsel did their work on their own with enormous attention to detail and unflagging devotion to the cause.  Many of the issues in this litigation . . . were unique and issues of first impression."

> \* \* \*

> "Class Counsel provided extraordinarily high-quality representation.  This case raised a number of unique and complex legal issues ….  The law firms of Berger Montague and Coughlin Stoia were indefatigable.  They represented the Class with a high degree of

3

professionalism, and vigorously litigated every issue against some of the ablest lawyers in the antitrust defense bar."

***In re Currency Conversion Fee Antitrust Litigation***, 263 F.R.D. 110, 129 (2009).


From **Judge Faith S. Hochberg,** of the United States District court for the District of New Jersey:

"[W]e sitting here don't always get to see such fine lawyering, and it's really wonderful for me both to have tough issues and smart lawyers … I want to congratulate all of you for the really hard work you put into this, the way you presented the issues, … On behalf of the entire federal judiciary I want to thank you for the kind of lawyering we wish everybody would do."

***In re Remeron Antitrust Litig.***, Civ. No. 02-2007 (Nov. 2, 2005).


From U.S. District **Judge Jan DuBois**, of the U.S. District Court of the Eastern District of Pennsylvania:

"[T]he size of the settlements in absolute terms and expressed as a percentage of total damages evidence a high level of skill by petitioners … The Court has repeatedly stated that the lawyering in the case at every stage was superb, and does so again."

***In Re Linerboard Antitrust Litig.***, 2004 WL 1221350, at *5-*6 (E.D. Pa. 2004).


From **Judge Nancy G. Edmunds**, of the U.S. District Court of the Eastern District of Michigan:

"[T]his represents an excellent settlement for the Class and reflects the outstanding effort on the part of highly experienced, skilled, and hard working Class Counsel….[T]heir efforts were not only successful, but were highly organized and efficient in addressing numerous complex issues raised in this litigation[.]"

***In re Cardizem CD Antitrust Litig.***, MDL No. 1278 (E.D. Mich., Nov. 26, 2002).


From **Judge Charles P. Kocoras,** of the U.S. District Court for the Northern District of Illinois:

"The stakes were high here, with the result that most matters of consequence were contested.  There were numerous trips to the courthouse, and the path to the trial court and the Court of Appeals frequently traveled.  The efforts of counsel for the class has [sic] produced a substantial recovery, and it is represented that the cash settlement alone is the second largest in the history of class action litigation. . . . There is no question that the results achieved by class counsel were extraordinary [.]"

Regarding the work of Berger Montague in achieving more than $700 million in settlements with some of the defendants in *In Re Brand Name Prescription Drugs Antitrust Litigation*, 2000 U.S. Dist. LEXIS 1734, at *3-*6 (N.D. Ill. Feb. 9, 2000).

From **Judge Peter J. Messitte,** of the U.S. District Court for the District of Maryland:

> "The experience and ability of the attorneys I have mentioned earlier, in my view in reviewing the documents, which I have no reason to doubt, the plaintiffs' counsel are at the top of the profession in this regard and certainly have used their expertise to craft an extremely favorable settlement for their clients, and to that extent they deserve to be rewarded."

Settlement Approval Hearing, Oct. 28, 1994, in *Spawd, Inc. and General Generics v. Bolar Pharmaceutical Co., Inc.*, CA No. PJM-92-3624 (D. Md.).

From **Judge Donald W. Van Artsdalen,** of the U.S. District Court for the Eastern District of Pennsylvania:

> "As to the quality of the work performed, although that would normally be reflected in the not immodest hourly rates of all attorneys, for which one would expect to obtain excellent quality work at all times, the results of the settlements speak for themselves. Despite the extreme uncertainties of trial, plaintiffs' counsel were able to negotiate a cash settlement of a not insubstantial sum, and in addition, by way of equitable relief, substantial concessions by the defendants which, subject to various condition, will afford the right, at least, to lessee-dealers to obtain gasoline supply product from major oil companies and suppliers other than from their respective lessors. The additional benefits obtained for the classes by way of equitable relief would, in and of itself, justify some upward adjustment of the lodestar figure."

*Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 31 (E.D. Pa. 1985).

From **Judge Krupansky**, who had been elevated to the Sixth Circuit Court of Appeals:

> Finally, the court unhesitatingly concludes that the quality of the representation rendered by counsel was uniformly high.  The attorneys involved in this litigation are extremely experienced and skilled in their prosecution of antitrust litigation and other complex actions.  Their services have been rendered in an efficient and expeditious manner, but have nevertheless been productive of highly favorable result.

*In re Art Materials Antitrust Litigation*, 1984 CCH Trade Cases ¶65,815 (N.D. Ohio 1983).

From **Judge Joseph Blumenfeld,** of the U.S. District Court for the District of Connecticut:

> "The work of the Berger firm showed a high degree of efficiency and imagination, particularly in the maintenance and management of the national class actions."

*In re Master Key Antitrust Litigation*, 1977 U.S. Dist. LEXIS 12948, at *35 (Nov. 4, 1977).

**Securities & Investor Protection**

From **Judge Jed Rakoff** of the U.S. District Court for the Southern District of New York:

> Court stated that lead counsel had made "very full and well-crafted" and "excellent submissions"; that there was a "very fine job done by plaintiffs' counsel in this case"; and that this was "surely a very good result under all the facts and circumstances."

*In re Merrill Lynch & Co., Inc. Securities, Derivative & ERISA Litigation*, Master File No. 07-cv-9633(JSR)(DFE) (S.D.N.Y., July 27, 2009).

From **Judge Michael M. Baylson** of the U.S. District Court for the Eastern District of Pennsylvania:

> "The Court is aware of and attests to the skill and efficiency of class counsel: they have been diligent in every respect, and their briefs and arguments before the Court were of the highest quality. The firm of Berger Montague took the lead in the Court proceedings; its attorneys were well prepared, articulate and persuasive."

*In re CIGNA Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 51089, at *17-*18 (E.D. Pa. July 13, 2007).

From **Judge Stewart Dalzell** of the U.S. District Court for the Eastern District of Pennsylvania:

> "The quality of lawyering on both sides, but I am going to stress now on the plaintiffs' side, simply  has not been exceeded in any case, and we have had some marvelous counsel appear before us and make superb arguments, but they really don't come any better than Mrs. Savett… [A]nd the arguments we had on the motion to dismiss [Mrs. Savett argued the motion], both sides were fabulous, but plaintiffs' counsel were as good as they come."

*In re U.S. Bioscience Secs. Litig.*, No. 92-0678 (E.D. Pa. April 4, 1994).

From **Judge Wayne Andersen** of the U.S. District Court for the Northern District of Illinois:

> "[Y]ou have acted the way lawyers at their best ought to act. And I have had a lot of cases…in 15 years now as a judge and I cannot recall a significant case where I felt people were better represented than they are here…I would say this has been the best representation that I have seen."

*In re: Waste Management, Inc. Secs. Litig.*, No. 97-C 7709 (N.D. Ill. 1999).


From **Chancellor William Chandler, III** of the Delaware Chancery Court:

> "All I can tell you, from someone who has only been doing this for roughly 22 years, is that I have yet to see a more fiercely and intensely litigated case than this case.  Never in 22 years have I seen counsel going at it, hammer and tong, like they have gone at it in this case.  And I think that's a testimony – Mr. Valihura correctly says that's what they are supposed to do.  I recognize that; that is their job, and they were doing it professionally."

*Ginsburg v. Philadelphia Stock Exchange, Inc.*, No. 2202 (Del. Ch., Oct. 22, 2007).


From **Judge Stewart Dalzell** of the U.S. District Court for the Eastern District of Pennsylvania:

> "Thanks to the nimble class counsel, this sum, which once included securities worth $149.5 million is now all cash.  Seizing on an opportunity Rite Aid presented, class counsel first renegotiated what had been stock consideration into Rite Aid Notes and then this year monetized those Notes.  Thus, on February 11, 2003, Rite Aid redeemed those Notes from the class, which then received $145,754,922.00.   The class also received $14,435,104 in interest on the Notes."

> "Co-lead counsel ... here were extraordinarily deft and efficient in handling this most complex matter... they were at least eighteen months ahead of the United States Department of Justice in ferreting out the conduct that ultimately resulted in the write down of over $1.6 billion in previously reported Rite Aid earnings.  In short, it would be hard to equal the skill class counsel demonstrated here."

*In re Rite Aid Corp. Securities Litigation*, 269 F. Supp. 2d 603, 605, n.1, 611 (E.D. Pa. 2003).


From **Judge Helen J. Frye**, United States District Judge for the U.S. District Court for the District of Oregon:

"In order to bring about this result [partial settlements then totaling $54.25 million], Class Counsel were required to devote an unusual amount of time and effort over more than eight years of intense legal litigation which included a four-month long jury trial and full briefing and argument of an appeal before the Ninth Circuit Court of Appeals, and which produced one of the most voluminous case files in the history of this District."

\* \* \*

"Throughout the course of their representation, the attorneys at Berger Montague and Stoll, Stoll, Berne, Lokting & Shlachter who have worked on this case have exhibited an unusual degree of skill and diligence, and have had to contend with opposing counsel who also displayed unusual skill and diligence."

*In Re Melridge, Inc. Securities Litigation*, No. CV 87-1426-FR (D. Ore. April 15, 1996).

From **Judge Marvin Katz** of the U.S. District Court for the Eastern District of Pennsylvania:

"[T]he co-lead attorneys have extensive experience in large class actions, experience that has enabled this case to proceed efficiently and professionally even under short deadlines and the pressure of handling thousands of documents in a large multi-district action... These counsel have also acted vigorously in their clients' interests...."

\* \* \*

"The management of the case was also of extremely high quality....  [C]lass counsel is of high caliber and has extensive experience in similar class action litigation....   The submissions were of consistently high quality, and class counsel has been notably diligent in preparing filings in a timely manner even when under tight deadlines."

Commenting on class counsel, where the firm served as both co-lead and liaison counsel in *In re Ikon Office Solutions, Inc. Securities Litigation*, 194 F.R.D. 166, 177, 195 (E.D. Pa. 2000).

From **Judge William K. Thomas,** Senior District Judge for the United States District Court for the Northern District of Ohio:

"In the proceedings it has presided over, this court has become directly familiar with the specialized, highly competent, and effective quality of the legal services performed by Merrill G. Davidoff, Esq. and Martin I. Twersky, Esq. of Berger Montague...."

\* \* \*

"Examination of the experience-studded biographies of the attorneys primarily involved in this litigation and review of their pioneering prosecution of many class actions in antitrust,

securities, toxic tort matters and some defense representation in antitrust and other litigation, this court has no difficulty in approving and adopting the hourly rates fixed by Judge Aldrich."

Commenting in *In re Revco Securities Litigation*, Case No. 1:89CV0593, Order (N.D. Oh. September 14, 1993).

## Civil/Human Rights Cases

From **Deputy Treasury Secretary Stuart E. Eizenstat**:

> "We must be frank.  It was the American lawyers, through the lawsuits they brought in U.S. courts, who placed the long-forgotten wrongs by German companies during the Nazi era on the international agenda.  It was their research and their work which highlighted these old injustices and forced us to confront them.  Without question, we would not be here without them....  For this dedication and commitment to the victims, we should always be grateful to these lawyers."

In his remarks at the July 17, 2000, signing ceremony for the international agreements which established the German Foundation to act as a funding vehicle for the payment of claims to Holocaust survivors.

## Insurance Litigation

From **Judge Janet C. Hall**, of the U.S. District Court of the District of Connecticut:

> Noting the "very significant risk in pursuing this action" given its uniqueness in that "there was no prior investigation to rely on in establishing the facts or a legal basis for the case….[and] no other prior or even now similar case involving parties like these plaintiffs and a party like these defendants." Further, "the quality of the representation provided to the plaintiffs ... in this case has been consistently excellent….  [T]he defendant[s] ... mounted throughout the course of the five years the case pended, an extremely vigorous defense….  [B]ut for counsel's outstanding work in this case and substantial effort over five years, no member of the class would have recovered a penny….  [I]t was an extremely complex and substantial class ... case ... [with an] outstanding result."

Regarding the work of Berger Montague attorneys Peter R. Kahana and Steven L. Bloch, among other co-class counsel, in *Spencer, et al. v. The Hartford Financial Services Group, Inc., et al.,* in the Order approving the $72.5 million final settlement of this action, dated September 21, 2010 (No. 3:05-cv-1681, D. Conn.).

**Customer/Broker Arbitrations**

From **Robert E. Conner**, Public Arbitrator with the National Association of Securities Dealers, Inc.:

> "[H]aving participated over the last 17 years in 400 arbitrations and trials in various settings, ... the professionalism and the detail and generally the civility of everyone involved has been not just a cause for commentary at the end of these proceedings but between ourselves [the arbitration panel] during the course of them, and ... the detail and the intellectual rigor that went into the documents was fully reflective of the effort that was made in general.  I wanted to make that known to everyone and to express my particular respect and admiration."

About the efforts of Berger Montague shareholders Merrill G. Davidoff and Eric L. Cramer, who achieved a $1.1 million award for their client, in *Steinman v. LMP Hedge Fund, et al.*, NASD Case No. 98-04152, at Closing Argument, June 13, 2000.

**Employment & Unpaid Wages**

From **Judge Timothy R. Rice**, United States Magistrate Judge for the U.S. District Court for the Eastern District of Pennsylvania:

> Describing Berger Montague as "some of the finest legal representation in the nation," who are "ethical, talented, and motivated to help hard working men and women."

Regarding the work of Berger Montague attorneys Sarah R. Schalman-Bergen and Camille F. Rodriguez in *Gonzalez v. Veritas Consultant Group, LLC, d/b/a Moravia Health Network*, No. 2:17-cv-1319-TR (E.D. Pa. March 13, 2019).

From **Judge Malachy E. Mannion**, United States District Judge for the U.S. District Court for the Middle District of Pennsylvania:

> "At the final approval hearing, class counsel reiterated in detail the arguments set forth in the named plaintiffs' briefing. … The court lauded the parties for their extensive work in reaching a settlement the court deemed fair and reasonable.
>
> *  *  *
>
> "The court is confident that [class counsel] are highly skilled in FLSA collective and hybrid actions, as seen by their dealings with the court and the results achieved in both negotiating and handling the settlement to date."

*Acevedo v. Brightview Landscapes, LLC*, No. 3:13-cv-2529, 2017 WL 4354809 (M.D. Pa. Oct. 2, 2017).

From **Judge Joseph F. Bataillon**, United States District Judge for the U.S. District Court for the District of Nebraska:

> [P]laintiffs' counsel succeeded in vindicating important rights. … The court is familiar with "donning and doffing" cases and based on the court's experience, defendant meat packing companies' litigation conduct generally reflects "what can only be described as a deeply-entrenched resistance to changing their compensation practices to comply with the requirements of FLSA." (citation omitted). Plaintiffs' counsel perform a recognized public service in prosecuting these actions as a 'private Attorney General' to protect the rights of underrepresented workers.
>
> The plaintiffs have demonstrated that counsel's services have benefitted the class. … The fundamental policies of the FLSA were vindicated and the rights of the workers were protected.

Regarding the work of Berger Montague among other co-counsel in *Morales v. Farmland Foods, Inc.*, No. 8:08-cv-504, 2013 WL 1704722 (D. Neb. Apr. 18, 2013).

From **Judge Jonathan W. Feldman**, United States Magistrate Judge for the U.S. District Court for the Western District of New York:

> "The nature of the instant application obliges the Court to make this point clear: In my fifteen years on the bench, no case has been litigated with more skill, tenacity and legal professionalism than this case. The clients, corporate and individual, should be proud of the manner in which their legal interests were brought before and presented to the Court by their lawyers and law firms."
>
> and
>
> "…the Court would be remiss if it did not commend class counsel and all those who worked for firms representing the thousands of current and former employees of Kodak for the outstanding job they did in representing the interests of their clients. For the last several years, lead counsel responsibilities were shared by Shanon Carson …. Their legal work in an extraordinarily complex case was exemplary, their tireless commitment to seeking justice for their clients was unparalleled and their conduct as officers of the court was beyond reproach."

**Employees Committed For Justice v. Eastman Kodak,** (W.D.N.Y. 2010) ($21.4 million settlement).

11

**Other**

From **Stephen M. Feiler, Ph.D.,** Director of Judicial Education, Supreme Court of Pennsylvania, Administrative Office of Pennsylvania Courts, Mechanicsburg, PA *on behalf of the Common Pleas Court Judges (trial judges) of Pennsylvania*:

> "On behalf of the Supreme Court of Pennsylvania and AOPC's Judicial Education Department, thank you for your extraordinary commitment to the *Dealing with Complexities in Civil Litigation* symposia.  We appreciate the considerable time you spent preparing and delivering this important course across the state.  It is no surprise to me that the judges rated this among the best programs they have attended in recent years."

About the efforts of Berger Montague attorneys Merrill G. Davidoff, Peter Nordberg and David F. Sorensen in planning and presenting a CLE Program to trial judges in the Commonwealth of Pennsylvania.

**Relevant Practice Areas and Case Profiles**

**Employment & Unpaid Wages**
The Berger Montague Employment & Unpaid Wages Department works tirelessly to safeguard the rights of employees, and devotes all of their energies to helping the firm's clients achieve their goals.  Our attorneys' understanding of federal and state wage and hour laws, federal and state civil rights and discrimination laws, ERISA, the WARN Act, laws protecting whistleblowers, such as federal and state False Claims Acts, and other employment laws, allows us to develop creative strategies to vindicate our clients' rights and help them secure the compensation to which they are entitled.

Berger Montague is at the forefront of class action litigation, seeking remedies for employees under the Fair Labor Standards Act, state wage and hour law, breach of contract, unjust enrichment, and other state common law causes of action.

Berger Montague's Employment & Unpaid Wages Group, which is co-chaired by Managing Shareholder Shanon Carson and Shareholder Sarah Schalman-Bergen, is repeatedly recognized for outstanding success in effectively representing its clients. In 2015, The National Law Journal selected Berger Montague as the top plaintiffs' law firm in the Employment Law category at the Elite Trial Lawyers awards ceremony. Portfolio Media, which publishes Law360, also recognized Berger Montague as one of the eight Top Employment Plaintiffs' Firms in 2009.

Representative cases include the following:

▪ ***Fenley v. Wood Group Mustang, Inc***:  The firm served as lead counsel and obtained a settlement of $6.25 million on behalf of a class of oil and gas inspectors who allegedly did not receive overtime compensation for hours worked in excess of 40 per week. (Civil Action No. 2:15-cv-326 (S.D. Ohio)).

- ***Sanders v. The CJS Solutions Group, LLC***:  The firm served as co-lead counsel and obtained a settlement of $3.24 million on behalf of a class of IT healthcare consultants who allegedly did not receive overtime premiums for hours worked in excess of 40 per week. (Civil Action No. 17-3809 (S.D.N.Y.)).

- ***Gundrum v.* Cleveland Integrity Services, Inc..:**  The firm served as lead counsel and obtained a settlement of $4.5 million on behalf of a class of oil and gas inspectors who allegedly did not receive overtime compensation for hours worked in excess of 40 per week. (Civil Action No. 4:17-cv-55 (N.D. Okl.)).

- ***Fenley v.* Applied Consultants, Inc.:**  The firm served as lead counsel and obtained a settlement of $9.25 million on behalf of a class of oil and gas inspectors who allegedly did not receive overtime compensation for hours worked in excess of 40 per week. (Civil Action No. 2:15-cv-259 (W.D. Pa.)).

- ***Acevedo v. Brightview Landscapes, LLC***:  The firm served as co-lead counsel and obtained a settlement of $6.95 million on behalf of a class of landscaping crew members who allegedly did not receive proper overtime premiums for hours worked in excess of 40 per week. (Civil Action No. 3:13-cv-02529 (M.D. Pa.)).

- ***Jantz v. Social Security Administration:***  The firm served as co-lead counsel and obtained a settlement on behalf of employees with targeted disabilities ("TDEs") alleged that SSA discriminated against TDEs by denying them promotional and other career advancement opportunities.  The settlement was reached after more than ten years of litigation, and the Class withstood challenges to class certification on four separate occasions.  The settlement includes a monetary fund of $9.98 million and an unprecedented package of extensive programmatic changes valued at approximately $20 million.  EEOC No. 531-2006-00276X (2015).

- ***Ciamillo v. Baker Hughes, Incorporated:*** The firm served as lead counsel and obtained a settlement of $5 million on behalf of a class of oil and gas workers who allegedly did not receive any overtime compensation for working hours in excess of 40 per week. (Civil Action No. 14-cv-81 (D. Alaska)).

- ***Employees Committed for Justice v. Eastman Kodak Company:***  The firm served as co-lead counsel and obtained a settlement of $21.4 million on behalf of a nationwide class of African American employees of Kodak alleging a pattern and practice of racial discrimination (pending final approval).  A significant opinion issued in the case is *Employees Committed For Justice v. Eastman Kodak Co.*, 407 F. Supp. 2d 423 (W.D.N.Y. 2005) (denying Kodak's motion to dismiss).  No. 6:04-cv-06098 (W.D.N.Y.)).

- ***Salcido v. Cargill Meat Solutions Corp.:***  The firm served as co-lead counsel and obtained a settlement of $7.5 million on behalf of a class of thousands of employees of Cargill Meat Solutions Corp. alleging that they were forced to work off-the-clock and during

their breaks.  This is one of the largest settlements of this type of case involving a single plant in U.S. history.  (Civil Action Nos. 1:07-cv-01347-LJO-GSA and 1:08-cv-00605-LJO-GSA (E.D. Cal.)).

- ▪ ***Miller v. Hygrade Food Products, Inc.:***  The firm served as lead counsel and obtained a settlement of $3.5 million on behalf of a group of African American employees of Sara Lee Foods Corp. to resolve charges of racial discrimination and retaliation at its Ball Park Franks plant.  (No. 99-1087 (E.D. Pa.)).

- ▪ ***Chabrier v. Wilmington Finance, Inc.:***  The firm served as co-lead counsel and obtained a settlement of $2,925,000 on behalf of loan officers who worked in four offices to resolve claims for unpaid overtime wages.  A significant opinion issued in the case is *Chabrier v. Wilmington Finance, Inc.*, 2008 WL 938872 (E.D. Pa. April 04, 2008) (denying the defendant's motion to decertify the class).  (No. 06-4176 (E.D. Pa.)).

- ▪ ***Bonnette v. Rochester Gas & Electric Co.:***  The firm served as co-lead counsel and obtained a settlement of $2 million on behalf of a class of African American employees of Rochester Gas & Electric Co. to resolve charges of racial discrimination in hiring, job assignments, compensation, promotions, discipline, terminations, retaliation, and a hostile work environment.  (No. 07-6635 (W.D.N.Y.)).

- ▪ ***Confidential***.  The firm served as lead counsel and obtained a settlement of $6 million on behalf of a group of African American employees of a Fortune 100 company to resolve claims of racial discrimination, as well as injunctive relief which included significant changes to the Company's employment practices (settled out of court while charges of discrimination were pending with the U.S. Equal Employment Opportunity Commission).

## Founding Partner

### David Berger - *1912-2007*

David Berger was the founder and the Chairman of Berger Montague.  He received his A.B. *cum laude* in 1932 and his LL.B. *cum laude* in 1936, both from the University of Pennsylvania.  He was a member of The Order of the Coif and was an editor of the *University of Pennsylvania Law Review*.  He had a distinguished scholastic career including being Assistant to Professor Francis H. Bohlen and Dr. William Draper Lewis, Director of the American Law Institute, participating in the drafting of the first Restatement of Torts.  He also served as a Special Assistant Dean of the University of Pennsylvania Law School.  He was a member of the Board of Overseers of the Law School and Associate Trustee of the University of Pennsylvania.  In honor of his many contributions, the Law School established the David Berger Chair of Law for the Improvement of the Administration of Justice.

David Berger was a law clerk for the Pennsylvania Supreme Court.  He served as a deputy assistant to Director of Enemy Alien Identification Program of the United States Justice Department during World War II.

Thereafter he was appointed Lt.j.g. in the U.S. Naval Reserve and he served in the South Pacific aboard three aircraft carriers during World War II.  He was a survivor of the sinking of the U.S.S. Hornet in the Battle of Santa Cruz, October 26, 1942.  After the sinking of the Hornet, Admiral Halsey appointed him a member of his personal staff when the Admiral became Commander of the South Pacific. Mr. Berger was ultimately promoted to Commander.  He was awarded the Silver Star and Presidential Unit Citation.

After World War II, he was a law clerk in the United States Court of Appeals.  The United States Supreme Court appointed David Berger a member of the committee to draft the Federal Rules of Evidence, the basic evidentiary rules employed in federal courts throughout the United States. David Berger was a fellow of the American College of Trial Lawyers, the International Society of Barristers, and the International Academy of Trial Lawyers, of which he was a former Dean.  He was a Life Member of the Judicial Conference of the Third Circuit and the American Law Institute.

A former Chancellor (President) of the Philadelphia Bar Association, he served on numerous committees of the American Bar Association and was a lecturer and author on various legal subjects, particularly in the areas of antitrust, securities litigation, and evidence.

David Berger served as a member of President John F. Kennedy's committee which designed high speed rail lines between Washington and Boston.  He drafted and activated legislation in the Congress of the United States which resulted in the use of federal funds to assure the continuance of freight and passenger lines throughout the United States.  When the merger of the Pennsylvania Railroad and the New York Central Railroad, which created the Penn Central Transportation Company, crashed into Chapter 11, David Berger was counsel for Penn Central and a proponent of its reorganization.  Through this work, Mr. Berger ensured the survival of the major railroads in the Northeastern section of the United States including Penn Central, New Jersey Central, and others.

Mr. Berger's private practice included clients in London, Paris, Dusseldorf, as well as in Philadelphia, Washington, New York City, Florida, and other parts of the United States.  David Berger instituted the first class action in the antitrust field, and for over 30 years he and the Berger firm were lead counsel and/or co-lead counsel in countless class actions brought to successful conclusions, including antitrust, securities, toxic tort and other cases.  He served as one of the chief counsel in the litigation surrounding the demise of Drexel Burnham Lambert, in which over $2.6 billion was recovered for various violations of the securities laws during the 1980s.  The recoveries benefitted such federal entities as the FDIC and RTC, as well as thousands of victimized investors.

In addition, Mr. Berger was principal counsel in a case regarding the Three Mile Island accident near Harrisburg, Pennsylvania, achieving the first legal recovery of millions of dollars for economic harm caused by the nation's most serious nuclear accident.  As part of the award in the case, David Berger established a committee of internationally renowned scientists to determine the effects on human beings of emissions of low level radiation.

In addition, as lead counsel in *In re Asbestos School Litigation*, he brought about settlement of this long and vigorously fought action spanning over 13 years for an amount in excess of $200 million.

David Berger was active in Democratic politics.  President Clinton appointed David Berger a member of the United States Holocaust Memorial Council, in which capacity he served from 1994-2004.  In addition to his having served for seven years as the chief legal officer of Philadelphia, he was a candidate for District Attorney of Philadelphia, and was a Carter delegate in the Convention which nominated President Carter.

Over his lengthy career David Berger was prominent in a great many philanthropic and charitable enterprises some of which are as follows:  He was the Chairman of the David Berger Foundation and a long time honorary member of the National Commission of the Anti-Defamation League. He was on the Board of the Jewish Federation of Philadelphia and, at his last place of residence, Palm Beach, as Honorary Chairman of the American Heart Association, Trustee of the American Cancer Society, a member of the Board of Directors of the American Red Cross, and active in the Jewish Federation of Palm Beach County.

David Berger's principal hobby was tennis, a sport in which he competed for over 60 years.  He was a member of the Board of Directors of the International Tennis Hall of Fame and other related organizations for assisting young people in tennis on a world-wide basis.

### Firm Chair

**Eric L. Cramer – Chairman**
Mr. Cramer is Firm Chairman and Co-Chair of the Firm's antitrust department. He has a national practice in the field of complex litigation, primarily in the area of antitrust class actions. He is currently co-lead counsel in multiple significant antitrust class actions across the country in a variety of industries and is responsible for winning numerous significant settlements for his clients totaling well over $2 billion. Most recently, he has focused on representing workers claiming that anticompetitive practices have suppressed their pay, including cases on behalf of mixed-martial-arts fighters and chicken growers.

In 2018, he was named Philadelphia antitrust "Lawyer of the Year" by *Best Lawyers*, and in 2017, he won the American Antitrust Institute's Antitrust Enforcement Award for Outstanding Antitrust Litigation Achievement in Private Law Practice for his work in *Castro v. Sanofi Pasteur Inc.*, No. 11-cv-07178 (D.N.J.). He has also identified as a top tier antitrust lawyer by *Chambers & Partners* in Pennsylvania and nationally. *Chambers* observed that Mr. Cramer is "really a tremendous advocate in the courtroom, with a very good mind and presence." He has been highlighted annually since 2011 by *The Legal 500* as one of the country's top lawyers in the field of complex antitrust litigation, and repeatedly deemed one of the "Best Lawyers in America," including in 2018. In 2014 and 2018, Mr. Cramer was selected by *Philadelphia Magazine* as one of the top 100 lawyers in Philadelphia.

Mr. Cramer is also a frequent speaker at antitrust and litigation related conferences. He was the only Plaintiffs' lawyer selected to serve on the American Bar Association's Antitrust Section Transition Report Task Force delivered to the incoming Obama Administration in 2012. He is a Senior Fellow and Vice President of the Board of Directors of the American Antitrust Institute; a past President of COSAL (Committee to Support the Antitrust Laws), a leading industry group; a member of the Advisory Board of the Institute of Consumer Antitrust Studies of the Loyola University Chicago School of Law; and a member of the Board of Directors of Public Justice, a national public interest law firm.

He has written widely in the fields of class certification and antitrust law. Among other writings, Mr. Cramer has co-authored *Antitrust, Class Certification, and the Politics of Procedure*, 17 George Mason Law Review 4 (2010), which was cited by both the First Circuit in *In re Nexium Antitrust Litig.*, 777 F.3d 9, 27 (1st Cir. 2015), *quoting* Davis & Cramer, 17 Geo. Mason L. Rev. 969, 984-85 (2010), and the Third Circuit in *Behrend v. Comcast Corp.*, 655 F.3d 182, 200, n.10 (3d Cir. 2011), *rev'd on other grounds*, 133 S. Ct. 1426 (2013). He has also co-written a number of other pieces, including: *Of Vulnerable Monopolists?: Questionable Innovation in the Standard for Class Certification in Antitrust Cases*, 41 Rutgers Law Journal 355 (2009-2010); *A Questionable New Standard for Class Certification in Antitrust Cases*, published in the ABA's Antitrust Magazine, Vol. 26, No. 1 (Fall 2011); a Chapter of American Antitrust Institute's Private International Enforcement Handbook (2010), entitled "*Who May Pursue a Private Claim*?"; and, a chapter of the American Bar Association's Pharmaceutical Industry Handbook (July 2009), entitled "Assessing Market Power in the Prescription Pharmaceutical Industry."

Mr. Cramer is a *summa cum laude* graduate of Princeton University (1989), where he was elected to *Phi Beta Kappa*. He graduated *cum laude* from Harvard Law School with a J.D. in 1993.

### Berger Montague's Employment & Unpaid Wages Group

### Sarah R. Schalman-Bergen – Shareholder

Sarah R. Schalman-Bergen is a Shareholder at the Firm. She Co-Chairs the Firm's Employment Law Department and is a member of the Firm's Antitrust, Insurance Products & Financial Services, and Lending Practices & Borrowers' Rights Departments. She is also a member of the Firm's Hiring Committee, Associate Development Committee and Pro Bono Committee.

Ms. Schalman-Bergen represents employees who are not being paid properly in class and collective action wage and hour employment cases as well as in class action discrimination cases across the country. Specifically, Ms. Schalman-Bergen has served as lead counsel in dozens of wage theft lawsuits, representing employees in a variety of industries, including at meat and poultry plants, at fast food restaurants, in the oil and gas industry, in white collar jobs and in the government.

Ms. Schalman-Bergen also serves as counsel to employees, consumers and businesses in antitrust cases, including representing the employees of several high tech companies who alleged that the companies entered into "do not poach" agreements that illegally suppressed employees'

wages. Ms. Schalman-Bergen has represented homeowners whose mortgage loan servicers have force-placed extraordinarily high-priced insurance on them. She currently represents several cities in lawsuits against major banks for allegedly discriminatory practices in violation of the Fair Housing Act.

Ms. Schalman-Bergen is frequently asked to speak on continuing legal education seminars that relate to employment issues.  In 2015, Ms. Schalman-Bergen was honored as a "Lawyer on the Fast Track" by The Legal Intelligencer. Ms. Schalman-Bergen was 1 of 40 attorneys selected by a six-member judging panel composed of evaluators from all corners of the legal profession and Pennsylvania. From 2010 through 2019, Ms. Schalman-Bergen was named as a Pennsylvania Super Lawyer- Rising Star. In 2010, Ms. Schalman-Bergen was honored as an "Unsung Hero" by the Legal Intelligencer, Pennsylvania's daily law journal, for her pro bono work with the AIDS Law Project of Pennsylvania. From 2007-2009 Ms. Schalman-Bergen served as the Jerome J. Shestack Public Interest Fellow at WolfBlock LLP.

Ms. Schalman-Bergen maintains an active pro bono practice. She serves as volunteer of counsel to the AIDS Law Project of Pennsylvania. Through her role there, Ms. Schalman-Bergen litigates HIV discrimination and confidentiality cases, as well as other cases impacting the rights of people living with HIV/AIDS.

Prior to joining the Firm, Ms. Schalman-Bergen practiced in the litigation department at a large Philadelphia firm where she represented clients in a variety of industries in complex commercial litigation.

Ms. Schalman-Bergen is a 2007 *cum laude* graduate of Harvard Law School and a 2001 *summa cum laude* graduate of Tufts University.  During law school, Ms. Schalman-Bergen served as an executive editor for the Harvard Civil Rights-Civil Liberties Law Review.

**Phyllis Maza Parker – Shareholder**
Phyllis Maza Parker, a Shareholder, concentrates her practice primarily on complex securities class action litigation, representing both individual and institutional investors.  Her practice also includes commercial litigation.

Ms. Parker served on the team as co-lead counsel for the Class in *In re Xcel Energy, Inc. Securities Litigation* (D. Minn.). The case, which settled for $80 million, was listed among the 100 largest securities class action settlements in the United States since the enactment of the 1933-1934 Securities Acts. Among other cases, she has also served as co-lead counsel in *In re Reliance Group Holdings, Inc. Securities Litigation* ($15 million settlement); *In re The Loewen Group, Inc. Securities Litigation* ($6 million settlement); as lead counsel in *In re Veeco Instruments Inc. Securities Litigation* ($5.5 million settlement on the eve of trial); as co-lead counsel in *In re Nuvelo, Inc. Securities Litigation* ($8.9 million settlement); and, most recently, as co-lead counsel in *Coady v. Perry, et al.* (IndyMac Bancorp, Inc.) ($6.5 million settlement).

While studying for her J.D. at Temple, Ms. Parker was a member of the Temple Law Review. She published a Note on the subject of the Federal Sentencing Guidelines in the Temple Law Review, Vol. 67, No. 4, 1994, which has been cited by a court and in a law review article. After her first year of law school, Ms. Parker interned with the Honorable Dolores K. Sloviter of the United States Court of Appeals for the Third Circuit.

**Camille Fundora Rodriguez – Associate**
Ms. Rodriguez is an Associate in the Firm's Employment Law, Consumer Protection, and Lending Practices & Borrowers' Rights practice groups. Ms. Rodriguez primarily focuses on wage and hour class and collective actions arising under the Fair Labor Standards Act and state laws.

Prior to joining the Firm, Ms. Rodriguez practiced in the litigation department at a boutique Philadelphia law firm where she represented clients in a variety of personal injury, disability, and employment discrimination matters. Ms. Rodriguez is a graduate of Widener University School of Law.

Ms. Rodriguez is an active member of the Pennsylvania, Philadelphia, and Hispanic Bar Associations.

**Alexandra Koropey Piazza – Associate**
Alexandra Koropey Piazza, an Associate, is a member of the Firm's Employment Law, Consumer Protection and Lending Practices & Borrowers' Rights practice groups.  In the Employment Law practice group, Ms. Piazza primarily focuses on wage and hour class and collective actions arising under state and federal law.  Ms. Piazza's work in the Consumer Protection and Lending Practices & Borrowers' Rights practice groups involves consumer class actions concerning financial practices.

Ms. Piazza is a graduate of the University of Pennsylvania and Villanova University School of Law.  During law school, Ms. Piazza served as a managing editor of the Villanova Sports and Entertainment Law Journal and as president of the Labor and Employment Law Society.  Ms. Piazza also interned at the United States Attorney's Office and served as a summer law clerk for the Honorable Eduardo C. Robreno of the United States District Court for the Eastern District of Pennsylvania.

**Krysten Connon – Associate**
Ms. Connon is an Associate in the Firm's Employment & Unpaid Wages practice group. She represents employees who are not being paid properly in class and collective actions arising under the Fair Labor Standards Act and state laws.

Prior to joining the Firm, Ms. Connon practiced as a litigation associate at a large Philadelphia firm, where she represented corporate and individual clients in complex commercial litigation and arbitration matters. Ms. Connon also worked as a Staff Attorney at Women Against Abuse, where she litigated cases originating as domestic violence matters.

Ms. Connon graduated *summa cum laude* from the Drexel University School of Law, and is a Phi Beta Kappa graduate of the University of Maryland. Following law school, Ms. Connon served as a federal judicial law clerk in the United States District Court for the District of New Jersey and the United States District Court for the District of Columbia. She co-authored the 2015 Oxford University Press book, *Living in the Crosshairs: The Untold Stories of Anti-Abortion Terrorism*, which presents the results of extensive interviews with abortion providers around the intersections of law, policy, and anti-abortion violence. Ms. Connon currently serves on the Board of Directors of Planned Parenthood Southeastern Pennsylvania.